ANDREW J. FINNEGAN v. HANS GRONERUD and Another.[1]

November 27, 1895.

Nos. 9660—(140).

**Publication of Delinquent Tax List—Designation of Newspaper.**

Laws 1874, c. 1, § 112, relating to the assessment and collection of taxes, provides that the list of delinquent taxes upon real estate remaining unpaid on the first day of June shall be published once in each of three consecutive weeks in some newspaper of general circulation, and that "the newspaper in which such publication shall be made shall be designated by resolution of the board of county commissioners of the county in which the taxes are levied, at their annual meeting in January, or at a meeting of said board to be held on the third Monday of June in each year; a copy of which resolution, certified by the county auditor, shall be filed in the office of the clerk of the court." The third Monday in June, 1874, was the 15th day of that month. The county commissioners of Kandiyohi county, while in session at their annual meeting in the month of January, 1874, did not so designate a newspaper, nor did they hold a meeting or so act on the third Monday of June of that year. Said board adjourned from its January meeting in 1874 to March 18, then to March 19, then to June 19, and then to June 20, and on the last-named day it passed a resolution designating a newspaper wherein to publish such delinquent tax list. *Held* that, as the time fixed and limited by law for that purpose had previously expired, the act of the board in passing such resolution was thereby void for want of jurisdiction.

[1] Reported in 65 N. W. 128, 348.

Appeal by plaintiff from a judgment of the district court for Kandiyohi county, in favor of defendants, entered in pursuance of the findings and order of Powers, J. Reversed.

*Savage & Purdy*, for appellant.

*Little & Nunn*, for respondents.

BUCK, J. Each party claims title to a quarter section of land in Kandiyohi county, and it is conceded that the plaintiff has a title derived from the United States government, while the defendants' claim rests upon an alleged tax title, and its validity turns upon the sufficiency of the designation of a newspaper by the board of county commissioners of the above-named county, pursuant to the requirements of Laws 1874, c. 1, § 112.

This section requires that the county auditor shall cause a notice of the list of taxes on real estate remaining delinquent on the first day of June to be published once in each of three consecutive weeks in some newspaper of general circulation published at the county seat, and "the newspaper in which such publication shall be made shall be designated by resolution of the board of county commissioners of the county in which the taxes are levied, at their annual meeting in January, or at a meeting of said board to be held on the third Monday of June in each year; a copy of which resolution, certified by the county auditor, shall be filed in the office of the clerk of the court."

While the board of county commissioners of Kandiyohi county were in session at their annual meeting in the month of January, 1874, they did not during that month designate the newspaper in which the delinquent list should be published, nor did they hold any meeting or so designate it on the third Monday of June following. The board commenced its annual session January 6, 1874, held five sessions, adjourning from day to day, then adjourned to March 18, then to March 19, then to June 19, and then to June 20, 1874, when they passed a resolution designating a newspaper in which the delinquent tax list should be published. The third Monday of June of that year was the 15th day of that month.

It is a primary duty resting upon each citizen to pay his taxes promptly, for the purpose of carrying on the governmental machinery.

Laws could not be made effective unless a tax was imposed whereby means are supplied for this purpose. But in the exercise of the taxing power the method or remedy laid down by the statute must be strictly and fairly pursued, or the proceedings will be void. However much the individual may enjoy the benefits of a general taxation, to which he must or should contribute his proportion, yet such taxation is an enforced one; and, like other statutory proceedings where a person's property is to be taken for the public use, the proceeding should conform to the statutory requirements. These are general rules laid down in many of the law books. We also quote from the opinion of Mr. Justice Field in the case of French v. Edwards, 13 Wall. 506, bearing upon this subject, as follows: [2] "When the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory, but mandatory. They must be followed, or the acts done will be invalid. The power of the officer in all such cases is limited by the manner and conditions prescribed for its exercise." Usually the amount bid at a tax sale is very small, compared with the actual value of the property sold, and it seems no more than the requirements of justice that all tax proceedings which are in derogation of the common law should show a strict compliance with the statutory requirements. A law may be both directory and mandatory. State v. Smith, 22 Minn. 218. Its express provisions may point out the time, place, and manner in which certain acts should be done, and thus, to that extent, be directory; but, when those acts would operate to deprive a man of his land by an ex parte adversary proceeding, they should also be construed as mandatory.

Now, let us consider the facts in the case before us, and see whether the proceedings of the board of county commissioners were regular, and in compliance with the requirements of the tax law of 1874. We do not challenge the right of the board to adjourn in many cases from day to day, or for a longer time, and at such adjourned meeting transact its general business, nor do we contend that the board may not in many instances transact certain kinds of business at a meeting which is not a regular or a special meeting, but simply one held without notice, where all of the members are present and

[2] At page 511.

take part in the transaction of the official business. The meeting of the board of county commissioners was not held at any time fixed by law. It adjourned to a time beyond the time expressly fixed by the statute, viz. the third Monday in June, when by law it was required to designate the newspaper in which the list of taxes on real estate remaining delinquent should be published, if such designation had not then been previously made. In the case of Banning v. McManus, 51 Minn. 289, 53 N. W. 635, this court held that there was a limitation necessarily implied to the right of adjourning over by a board of county commissioners, and that a session could not be extended beyond the commencement of the next session fixed by law. The next session fixed by law after the regular session in January was the third Monday of June, or, as we have stated, the 15th day of June, of that year. This was not the time fixed by law for the transaction of general or special business, except the very business of designating the newspaper in which the list of delinquent taxes should be published. The fact that the board had ample time to designate such newspaper at its meeting in January leads to the conclusion that the legislature intended that the third Monday in June must be regarded as the utmost limit of time fixed by law, in which the board was authorized to act, and that its duty to do so at or before that time was mandatory, and that its failure in such respect rendered its act, and the publication of the delinquent list, invalid, for want of jurisdiction. The statute uses the word "shall" designate the newspaper at either one of the two meetings. This language is not directory, but mandatory, and a failure to obey it is not a mere irregularity, but a proceeding involving property rights; and the legislature intended it to be obeyed, or it would not have enacted such a law. If the board of county commissioners could willfully or negligently postpone this duty so enjoined by law for a period of three days, as in this case, beyond the time fixed by law, it could postpone it for a period of three months, or for such other time as it saw fit. A negation of authority to do an act at some other time need not exist in words. It may arise by implication, where all of the provisions of the act make it manifest that the legislature intends to limit the power of performance of duty to the particular time. 1 Blackwell, Tax Titles, § 309.

The board of county commissioners cannot designate a newspaper, and the time when it shall publish the list of delinquent taxes, at its pleasure. The law contemplates uniformity in the time of such publication of such list, as to the time of doing it, although uniformity may not be absolutely essential in this respect. The publication in a properly designated newspaper is for the benefit of the taxpayer, so that he can see if any such tax proceedings have been commenced. It will not do to say his eternal vigilance in watching for such tax proceeding from January to January is the price of his saving his land from a tax sale. The delay of the board was entirely inexcusable and unjustifiable, and, as it unquestionably appears that the board of county commissioners designated the newspaper in which the list of delinquent taxes should be published at a time beyond that limited and fixed by the statute for such purpose, we hold that the tax sale was void, and that respondents have not any title to the premises in question by reason of such tax sale.

The law of 1874 in regard to the time and manner of designating the publication of the list of delinquent taxes has been amended in some respects. If the board of county commissioners now fail to designate the newspaper in which such delinquent list shall be published at their annual meeting in January, then it shall be designated by the county auditor; thus limiting the power of the board to thus designate the newspaper, unless it is done at the time specified, and conferring this power, in case of such failure, upon another official, viz. the county auditor.

The judgment of the trial court is therefore reversed, and the plaintiff adjudged to have title to the premises in the complaint described.[3]

COLLINS, J. (concurring). From the fact that the board of county commissioners was given a period of nearly six months, by means of adjournments of the annual meeting in January, wherein to designate the newspaper in which to publish the delinquent list, and then, if the board had omitted so to do, it was provided that the designation should be made at a meeting held on the third Monday in June,—the very day on which the auditor is required to file the delinquent list with the clerk, and not many days before the publication will commence, if the officials attend to their duties,—I

---

[3] But see supplemental opinion, infra, page 61.

think it clearly and conclusively appears that the legislature intended to fix an ultimate day on which the board must act, if at all. If so, the provision is mandatory, and a designation on a subsequent day of no effect. It seems to me that, if this was not the intent of the legislature, the day on which the last opportunity is given for the board to act would not have been fixed with so much precision and care. Absolute certainty that the board would act in time was the object in view, and this could not be attained without withdrawing all discretion as to the last day on which the designation could be made.

MITCHELL, J. I dissent. The only question in this case is whether the board of county commissioners of Kandiyohi county made a valid designation of the newspaper in which the delinquent list of taxes for the year 1873 should be published. It appears that the board assumed to adjourn their regular January meeting from time to time, the last adjournments being from March 19 to June 19 and from June 19 to June 20, on which last day they passed the resolution designating the newspaper in which the delinquent list should be published. As the law then stood, the only regular annual meetings fixed by statute were on the first Tuesday in January and on the fourth Monday in July. Laws 1874, c. 74, § 1 (G. S. 1878, c. 8, § 102). Under the tax law then in force (Laws 1874, c. 1) the delinquent list was to be filed on the third Monday in June (section 110). The clerk of the court was thereupon to make a copy of this list, and deliver it to the county auditor (section 111), who was required forthwith to publish it for three weeks in a newspaper. "The newspaper in which such publication shall be made shall be designated by resolution of the board of county commissioners of the county in which the taxes are levied, at their annual meeting in January, or at a meeting of said board to be held on the third Monday of June in each year; a copy of which resolution, certified by the county auditor, shall be filed in the office of the clerk of the court." Section 112. In 1874 the third Monday in June fell on the 15th of the month. It is also to be observed that under the tax law of 1874, in case the board of county commissioners failed to designate the newspaper in which the delinquent list was to be published, no other body or officer was authorized to designate it;

in this respect differing from the present law, under which, if the board fails to make the designation within a certain time, the duty devolves upon the county auditor.[4] In this case no question is made but that the resolution was passed, and a certified copy of it filed with the clerk of the court, before the publication of the delinquent list was commenced.

The whole case turns upon the question whether the provisions of the statute as to the time within which the board of county commissioners was required to designate the newspaper are mandatory, or merely directory. The test usually applied, and the one applied by this court, is as follows: If the provision as to the time when an act is required to be done is intended merely for the guidance of the conduct of officers in the conduct of public business, in order to secure order, system, and dispatch in proceedings, and by a disregard of it the rights of parties interested cannot be injuriously affected, it will be deemed merely directory, and not a limitation upon the exercise of the power of the officers, unless accompanied by negative words importing that the act required shall not be done at any other time than that designated. But where the requisitions prescribed are intended for the protection of the citizen and to prevent a sacrifice of his property, and by a disregard of them his rights might be injuriously affected, they will be deemed mandatory, and not directory. The power of the officer in all such cases is limited by the measure and conditions prescribed for its exercise. Kipp v. Dawson, 31 Minn. 373, 17 N. W. 961, and 18 N. W. 96; Cooley, Taxn. 280 (212) et seq. The justice of this rule is apparent, for "no one should be at liberty to plant himself upon the nonfeasances or misfeasances of officers, under the revenue laws, which in no way concern himself and make them an excuse for a failure on his part to perform his own duty." The particular language of the statute, as to whether it uses the word "shall" or "may," is not at all controlling.

Judged by the test suggested, I am clearly of opinion that the provision of the statute as to the time when the newspaper shall be designated is, within certain limits, merely directory, and not mandatory, or a limitation on the power of the county board to make a designation. The main purpose of the provision is to insure the designation of the newspaper in time to secure the publication of

---

[4] G. S. 1894, § 1581.

the delinquent list promptly and within the time contemplated by the statute. Considered exclusively with reference to that object, the provision would be clearly directory. But the same provision in a statute may be in part mandatory and in part directory. So far as the rights of the taxpayers are concerned, the object of requiring the newspaper to be designated, and a copy of the resolution filed with the clerk of the court, is to enable him to ascertain in what paper the delinquent list is published, so that he may find out whether proceedings are commenced against any of his property. The place he is to look to ascertain that fact is in the clerk's office. The statute does not provide when the copy of the resolution shall be filed. It would be sufficient if it is filed any time before the publication of the delinquent list is commenced. If the newspaper is designated, and a copy of the resolution is filed with the clerk before publication is begun, that is all that at all affects his interest; and to this extent the requirements of the statute as to time are mandatory, but beyond that they are designed merely to secure order and dispatch in the proceedings, and hence they are merely directory.

There is nothing in the language of the statute equivalent to negative words importing that the designation shall not be made after June 15. It can readily be seen why the legislature directed that the designation of the newspaper should be made at a special meeting on that date, if not made before. That was the day on which the delinquent list was to be filed, and the statute contemplated its publication soon afterwards. As there was no annual meeting after the January meeting until the latter part of July, therefore, if the January meeting terminated without action on the part of the county board, a special meeting would be necessary, and if the meeting was not held by June 15 the publication of the delinquent list might be delayed. The direction for a special meeting on June 15 was intended to guard against this, and thus secure dispatch in the prosecution of the proceedings to enforce the payment of delinquent taxes, and not, in my opinion, to prohibit the designation of a paper after that date. There is no reason why the legislature should do so, and there is nothing in their language which requires us to hold that they intended to. Inasmuch as all the county commissioners were present and acted, it is wholly immaterial whether the meet-

ing on June 20 is considered an adjourned session of the January meeting, or a special meeting.

START, C. J.  I concur in the views and conclusion of Mr. Justice MITCHELL.

On motion for reargument the following opinion was filed December 23, 1895:

PER CURIAM.  It is ordered that the application for a reargument of this cause be, and it is hereby, denied, and stay vacated. Ordered further, that the previous direction of the court in this case, that judgment be entered for the plaintiff, be modified so as to read as follows: "Judgment reversed, and a new trial granted."