SYLVESTER KIPP and another *vs.* JOSHUA H. DAWSON.

January 11, 1884.

**Tax Sale—Judgment including Taxes not authorized to be Included.**
Sale of land for taxes delinquent in the year 1879, and prior years, pursuant to Laws 1881, c. 135. *Held*, an error in the amount of tax against land included in the published list and in the judgment did not affect the jurisdiction of the court, nor render the judgment void. It is immaterial whether the mistake arose from erroneously including in the amount the taxes for 1879 and 1880, or from an erroneous computation of the amount of taxes for the prior years.

**Same—Notice of Sale.**—The act referred to provided that the sale of the forfeited list should be made immediately following the delinquent sale. The delinquent sale commenced Monday, September 19th, and continued up to and including Saturday, September 24th. *Held*, that a notice was sufficient which fixed the time of sale of the forfeited list on Monday, September 26th.

**Same—Designation of Newspaper.**—The same act provided that the forfeited list should be appended to the delinquent list. This implied that both should be published together in the same newspaper. Hence, if the newspaper in which the delinquent list should be published was properly designated, this was sufficient for both lists.

**Same—Date of Publication—Statute held Directory.**—Where the provision of a statute as to the time when an act shall be done is intended merely for the guidance of public officers, so as to insure the orderly and prompt performance of public business, a disregard of which cannot injuriously affect the rights of parties interested, it will be deemed merely *directory;* but where it is intended for the protection of the citizen, and

| | |
|---|---|
| 31 | 373 |
| 44 | 14 |
| 44 | 385 |
| 31 | 373 |
| 45 | 504 |
| 31 | 373 |
| 47 | 330 |
| 31 | 373 |
| 48 | 476 |
| 31 | 373 |
| 51 | 292 |
| 31 | 373 |
| 54 | 240 |
| 31 | 373 |
| 60 | 395 |
| 31 | 373 |
| 63 | 59 |
| 31 | 373 |
| 75 | 466 |
| 31 | 373 |
| 85 | 346 |
| 85 | 527 |

to prevent a sacrifice of his property, and is such that, by a disregard of it, his rights might be injuriously affected, it will be deemed *mandatory*. Under this rule the provision of Gen. St. 1878, c. 11, § 72, as to the time within which the county auditor shall cause the delinquent list to be published, is directory, and not mandatory.

**Same—Publication held Sufficient.**—Hence, the fact that the first publication of such list was made on July 22d, instead of July 15th, as required by statute, did not affect the validity of the judgment, the requisite two weeks' notice of application for judgment having, in fact, been given.

Action to determine adverse claims to unoccupied real property in Chisago county, brought in the district court for Sibley county, removed to Chisago county, and tried by *Crosby,* J., without a jury.

The defendant's title is founded upon a tax judgment and sale, the facts found by the court being, in substance, as follows:

On August 19, 1881, under the provisions of Laws 1881, c. 135, a tax judgment was entered in Chisago county against the land, and on September 26, 1881, the land was sold, and a certificate of sale delivered, by the county auditor to the defendant. In the judgment were included the taxes assessed on the land from 1874 to 1880, inclusive, amounting, with interest and costs, to $53.74. To the list of taxes for 1880, which became delinquent in 1881, the county auditor appended a list of all taxes on real estate in the county which appeared to have become delinquent in 1879 and prior years, which appended list was filed with the clerk of the district court on June 15, 1881. The copy of this list, made by the clerk of the district court, was published, with the notice attached, required by Gen. St. 1878, c. 11, § 71, on July 22 and July 29, 1881, in the Rush City Post, a weekly newspaper printed and published in the county, and which the county board, by resolution passed at a meeting held March 15, 1881, had designated as the newspaper in which "the delinquent tax list of said county for the year 1880" should be published. It was pursuant to this resolution that the auditor caused the appended list to be published, and no other designation was ever made by the county board, or by the auditor, of a newspaper in which should be published the delinquent list of 1881 for the taxes of 1880, or the appended list under Laws 1881, c. 135. The county auditor gave

notice of sale under the judgment, for September 26, 1881, by publication in the Rush City Post, on September 9 and 16, 1881, and by posting copies of the notice as required by law. He began the sale of lands on which the taxes for 1880 became delinquent in 1881, on the third Monday (19th day) of September, 1881, and continued the sale from day to day for six days, closing it on the evening of Saturday, September 24th. On the 26th he began the sale under Laws 1881, *c.* 135, at which the plaintiffs purchased the land in question.

The court also found that the amount of taxes on the land for 1874, 1875, 1877, and 1878, in the tax duplicates for those years, is expressed only in numerals, without any dollar-mark or other indication of what they represent; that the description of the land in the tax duplicate for 1877 is so indefinite as to be void; that such duplicate was made and delivered to the treasurer on December 4, 1877; that the duplicate for 1878 was made and delivered to the treasurer on December 2, 1878, and, in the certificate appended thereto, the county auditor states, among other things, that it is "hereby delivered to you under and by virtue of the provisions of section 87 of the general tax law, approved March 9, 1874."

It was also found that the auditor, in arriving at the amount of taxes for 1877 delinquent on the land, which were included in the judgment, used the tax duplicate for that year, found in his office, to which no certificate or return of the county treasurer was attached, and in which no taxes were marked "paid."

The court held the tax sale void and annulled it, on the ground that the copy of the list and notice required to be delivered by the clerk of the district court to the county auditor, by Gen. St. 1878, *c.* 11, § 71, was not published within the time required by section 72 of that chapter, as amended by Laws 1881, *c.* 10. Judgment was ordered and entered for the plaintiffs, from which the defendant appeals.

*H. N. Setzer,* for appellant.

*S. & O. Kipp,* respondents, *pro se.*

The act of 1881 is void, because it fixes no definite date of sale and permits none to be fixed by the auditor. Gen. St. 1878, *c.* 11, § 82, requires the delinquent sale to begin on the 3rd Monday of Septem-

ber and to continue "from day to day for six consecutive days, or until the whole shall have been sold." The county auditor cannot determine how long the delinquent sale will continue. Under Laws 1881, *c.* 135, § 4, the auditor, if that act is valid, should notice the sale thereunder to take place "immediately following the delinquent sale in September." He could not legally name a specific date in his notice, and therefore his notice fixing September 26th was without authority, and is not made valid by the circumstance that the sale did, in fact, immediately follow the delinquent sale. A legal notice was a jurisdictional prerequisite to a valid sale. *Prindle* v. *Campbell,* 9 Minn. 197, (212;) *Morehouse* v. *Bowen,* Id. 297, (314;) Hilliard on Taxation, 514.

Section 4 of chapter 135, construed with section 8, prescribes the mode of sale. The certificate here states that the land "was offered for sale to the highest bidder," but the statute required it to be offered, *first,* for the total amount of taxes, interest and costs due thereon, and, if no bidder at that sum, then to the highest bidder who should bid not less than the state tax. A sale for less than the state tax would be wholly void, and yet the certificate might be true that the land was sold to the highest bidder. The certificate shows that the land was offered for sale unreservedly to the highest bidder, and as such offer was contrary to the statute, the offer and sale were void. While, ordinarily, a compliance with the form of tax deed prescribed by statute is sufficient, yet, when the conditions of sale are such that to follow the form is to recite an untruth and show an illegal sale, the form must be modified to suit the facts. *McGill* v. *Martin,* 14 Kan. 67; *McCauslin* v. *McGuire,* Id. 234.

If the court holds the statutory form of certificate sufficient, then this certificate is void, because it embraces several tracts of land in different parts of the county. It states that the auditor offered all the tracts for sale to the highest bidder, and the fact, afterwards recited, that they were bid upon and sold severally, does not show that they were offered for sale separately.

The forfeited list should have been published on or before July 15th. It was not published until July 22d. The publication required by the statute is for the protection of the tax-payer, and the statute is there-

fore mandatory, and not directory. *Com'rs of Stearns Co.* v. *Smith,* 25 Minn. 131; *Eastman* v. *Linn,* 26 Minn. 215; *Prindle* v. *Campbell,* 9 Minn. 197, (212;) *French* v. *Edwards,* 13 Wall. 506; Blackwell on Tax Titles, 239, 263; *Sharp* v. *Johnson,* 4 Hill, 92; *Clark* v. *Crane,* 5 Mich. 151; *People* v. *McCreery,* 34 Cal. 432; *Chandler* v. *Spear,* 22 Vt. 388; Cooley on Taxation, 218, 336; *Hill* v. *Mason,* 38 Me. 461; *Alexander* v. *Pitts,* 7 Cush. 503; *Strong* v. *Flagler,* 1 Carter, (Ind.) 542; *Hall* v. *County of Ramsey,* 30 Minn. 68; Potter's Dwarris on Statutes, 324, note, and cases cited.

MITCHELL, J. Action to determine adverse claim to real estate. Defendant in his answer claims title under a sale of the land for taxes delinquent in the year 1879 and prior years, pursuant to Laws 1881, *c.* 135. The principal questions in the case involve the validity of this sale.

1. The first point urged is, that the tax judgment itself was void, because the taxes for the years 1879 and 1880 were included in the amount. This was clearly a mistake, for the act referred to only authorizes proceedings against real estate for taxes which became delinquent in the year 1879 (*i. e.,* taxes of 1878) or any prior year or years. The judgment should only have been for the taxes of 1874 to 1878, inclusive. The only question is whether the error in the amount of tax included in the published list and in the judgment against this land is jurisdictional, and goes to the validity of the judgment. We think not. The fact that the taxes for 1874 to 1878 were delinquent authorized proceedings against this land under the act. The filing of the list with the clerk of the court had the force and effect of filing a complaint in an action against the land. The publication of this list, with the proper notice attached, was equivalent to the service of a summons upon all parties interested. These things being done, the court had jurisdiction of the subject-matter; and no error in the amount claimed in either the complaint or notice affected this jurisdiction. If a mistake was made in the amount of tax claimed against the land, this was a matter which the owner was bound to interpose by way of answer or objection, as provided by Gen. St. 1878, *c.* 11, § 75. It can make no difference in principle whether the mistake arose from erroneously including the taxes of 1879 and 1880, or from

an error in computing the amount of taxes for the prior years, which were properly included. And, in the general tax law, (Gen. St. 1878, c. 11, § 73,) mistakes in the amount of tax in the published list appearing against any piece of land, is one of the things which it is expressly provided shall not affect the jurisdiction of the court.

2. The next objection urged is against the sufficiency of the notice of sale under the judgment. The act of 1881 provides that the sale shall be made "*immediately following the delinquent sale in September.*" The delinquent sale commences on the third Monday of September, (Gen. St. 1878, c. 11, § 82,) and the county auditor "shall proceed with the sale thereof from day to day for six consecutive days, or until the whole shall have been sold." The third Monday in September, 1881, was the 19th of the month. This "delinquent sale," as the court finds, was continued from day to day for six consecutive days, and closed on Saturday evening, the 24th of September. Hence, Monday, the 26th of the month, was the first day on which the sale of the "forfeited list" could have commenced. The notice given by the county auditor was that the sale of the forfeited list, under the law of 1881, would commence on the 26th day of September, 1881. It is claimed that the auditor could not thus fix a specific date, but that the notice should have been, in the words of the statute, to wit, "immediately following the delinquent sale in September." We have no doubt that the latter form of notice would have been good. Indeed, inasmuch as, by the act of 1881, the "forfeited list" was to be appended to the "delinquent list," hence, to be published with it, and the sale under it to immediately follow the delinquent sale, it may admit of doubt whether any separate notice of the sale of the forfeited list was necessary at all, the idea of the statute seeming to be that the latter was to proceed as a continuation of the same sale. But, however this may be, in the present case the sale of the forfeited list did take place immediately following the delinquent sale, and the day fixed in the notice (the 26th) was in fact the next day (except Sunday) after the close of that sale. Hence, even if the notice would have been more properly in the words of the statute, we fail to see how anybody could have been prejudiced by the form of the notice given in this case. Indeed, the variation from the statu-

tory form, if it had any effect whatever, would operate in favor of all parties, for, had the notice been in the words of the statute, bidders and parties interested in the property might be compelled to be in attendance from the first day of the "delinquent sale," not knowing on what day it might end, and the "forfeited sale" commence; whereas, under the notice given, they were advised of the precise day on which the latter would begin. And if the auditor was assured that the delinquent sale would last six days, we can see no reason why he might not, in his notice, designate the next, or seventh, day as the date of the commencement of the "forfeited sale," instead of using the words of the statute. What would have been the effect had such a date been fixed in the notice that an interregnum would have intervened between the two sales, we do not now consider or determine.

3. The next objections are to the certificate of sale. There is nothing inconsistent between the recital in the certificate that the land "was offered for sale to the highest bidder," and the provisions of section 4 of the act of 1881. This section does provide for its being offered to the highest bidder. The certificate in this respect is in the very form given in the statute itself. It is further claimed that the certificate shows that several distinct tracts, including the one in question, were offered for sale "in bulk to the highest bidder for the whole." We are of opinion that the language of the certificate will not admit of this construction. It states, after describing the several parcels separately, and affixing a separate sum to each parcel, that the auditor "sold the said pieces or parcels of land to J. H. Dawson *severally,* for the sums above stated." This could not well be if the tracts were all offered for sale and sold together in gross.

4. The next objection attacks the validity of the judgment. It is that no newspaper was ever designated, as required by law, in which this "forfeited list" should be published. Section 1 of the act of 1881 provides that the list shall be *appended* to the "delinquent list." This necessarily implies that the two should be published together and in the same paper. Hence, if the newspaper in which the "delinquent list" should be published was properly designated, this was sufficient for both. The county board, at their March meeting in 1881, by resolution designated the newspaper in which this delin-

.quent list should be published.  The only point made against this
resolution is that it uses the words "the delinquent tax-list of said
county *for the year 1880,*" whereas it should have been the delin-
quent tax-list for 1881.   The expression used in the act of 1881 is,
"the list of delinquent taxes for the present year."   This, no doubt,
refers, not to the taxes of 1881, which would become due in 1882,
but to the taxes of 1880, which became delinquent the then present
year of 1881.   That was, no doubt, the list to which the forfeited list
was to be appended.   We have so construed the law, (*Knudson* v.
*Curley,* 30 Minn. 433,) and we think it sufficiently clear that this
was what is referred to and meant by the resolution.   It could not
have referred to the list of taxes for 1879, which became delinquent
in 1880, for the time for the publication of that list had expired the
year previous.   The language of the resolution is certainly not more
ambiguous than the words of the law of 1881 itself, which we have
construed in the case cited.

5. It only remains to consider the objection made that the tax
judgment is void, because the list and accompanying notice of appli-
cation for judgment were not published within the time prescribed
by law.   This was the ground upon which the court below held the
tax title invalid, and for that reason, among others, it is entitled to
somewhat full consideration, inasmuch as we have arrived at a dif-
ferent conclusion.   The provisions of the statute bearing upon the
question are as follows:   Section 2 of the act of 1881 provides that
"the same proceedings shall be had with reference to advertisement
*   *   *   of the property described in such forfeited lists as are re-
quired by the general tax law (Gen. St. 1878, c. 11,) for advertise-
ment   *   *   *   of property described in the regular delinquent list."
Section 70 of the general tax law requires the county auditor to file
in the office of the clerk of the district court, on or before June 15th,
a list of delinquent taxes.   Section 71 of the same chapter requires
the clerk, within 15 days thereafter, to make and deliver to the county
auditor a copy of the list so filed, with the prescribed notice attached.
Section 72 (as amended by Laws 1881, *c.* 10, § 12,) requires the
county auditor to cause this list and notice to be published once in
each of two consecutive weeks in the proper newspaper, "the first

publication of which list shall be made within 15 days after the delivery thereof, as provided in the preceding section." Hence, if all these officers comply with the directions of the law, the first publication of this list would be made on or before *July 15th.*

In the present case, this list and notice was first published July 22d, seven days after the time directed by statute. The question, therefore, resolves itself into this : Is this provision of statute *mandatory,* or merely *directory?* If the former, the omission to comply with it renders the judgment void; if the latter, this omission does not necessarily affect its validity. As remarked in Cooley on Taxation, 212 *et seq.*, all provisions of statute, not on their face merely permissory or discretionary, are intended to be obeyed, or else they would never have been enacted, and therefore they come to the several officers who are to act under them as commands. But the negligence or mistakes of public officers, and other causes, will often prevent a strict compliance; and when the provisions which have been disregarded constitute, as in this case, a part of a complicated system, it becomes of the highest importance to ascertain the effect the failure shall have on the other proceedings with which they are associated. Does the authority to proceed with the proceedings terminate when that particular step has been neglected, or may the proceedings go on notwithstanding the omission? In other words, should the provision of law not complied with be declared mandatory, or merely directory? The purpose of the provision ought generally to be conclusive on this point. No one should be at liberty to plant himself upon the nonfeasance or misfeasance of officers under these tax laws which in no way concerns or prejudices him. On the other hand, he ought always to have the right to insist that directions which the law has given for his benefit shall be strictly observed. The rule generally adopted (and we think the correct one) is that a statutory provision intended merely for the guidance of the conduct of officers in the conduct of public business, so as to insure the orderly and prompt performance of public duties, and a disregard of which cannot injuriously affect the rights of parties interested, will be deemed merely directory. Such, generally, are regulations as to the time within which a public officer shall perform an act, when the regulation is designed

merely to insure system and dispatch in the proceedings. But where the regulation is intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be injuriously affected, it is mandatory.

Subjected to this test, we think that the provisions as to the date of the first publication of the delinquent list are merely directory. They are in no way intended for the benefit of the tax-payer, but merely to insure the publication in time to allow the remaining proceedings to be had according to law. The sale has to take place on the third Monday in September. Preceding this, the list and notice of application for judgment must be published for two weeks. A hearing on this application must be had, and judgment rendered, and then, after judgment, notice of sale must be given for a specified length of time. The regulations of sections 70, 71, and 72, as to time, are designed to insure the doing of the acts therein required in time to permit the taking of these subsequent proceedings before sale. And if done in season to secure this, the tax-payer is in no way prejudiced by the failure to perform them at the precise date fixed by the law. The provisions, so far as time is concerned, which are designed for his benefit, and to prevent any unjust sacrifice of his property, are— *First*, the two weeks' publication of the list and notice of application for judgment, so that he may have an opportunity to answer or object to the entry of judgment if he desires; and, *second*, the giving of the proper notice of sale at the time fixed by law, so as to secure a fair sale. These, therefore, are mandatory. What the tax-payer is interested in is not the exact date of the publication of the list, but that he may have the kind and length of notice provided by law—*First*, before judgment, and then, *second*, before sale.

6. The fact that the notice of sale uses the word "interest" instead of "penalties," contained in the form given in section 82 of the general tax law, is unimportant, especially as, under the act of 1881, no penalties are included—merely principal, interest, and costs.

This disposes of all the points made by respondent against this tax title adversely to him, and therefore the judgment must be reversed, and a new trial ordered.

Ordered accordingly.

DICKINSON, J., *dissenting.* I dissent from the opinion of the court as to the first question considered therein. I think that the fact that the judgment included the taxes for the years 1879 and 1880 with the taxes for the other years, the same being charged in one gross sum upon the land, rendered the judgment void for want of jurisdiction. The subject in respect to which the court assumed to adjudicate was, in part, the taxes for the years 1879 and 1880. Independent of the act of 1881, the court had no power to entertain the proceeding so far as respects those taxes, nor to render judgment charging them as a lien upon the land, and decreeing a sale of the property to satisfy the same, for the common law gave to its courts no authority in such cases. The act of 1881 conferred no power upon the court except as to taxes which became delinquent in 1879 and prior years. Hence, the subject of the taxes for 1879 and 1880, and their enforcement against the land, was entirely without the jurisdiction of the court. Yet they are a part of the entire sum for which the judgment was rendered, and which was by such judgment charged upon the land; and to satisfy an amount of which these taxes were an integral part, the land was decreed to be and was sold. Under such circumstances, I think the entire judgment is void. It could not be enforced at all without enforcing it altogether. To hold it enforceable as a whole is to sanction and enforce an adjudication upon a subject which lies without the jurisdictional power of the court. A like case would be presented, if, in an action before a justice of the peace, upon a complaint setting forth two causes of action, one for the recovery of $100, and the other for the recovery of $500, the justice should, upon the default of the defendant, render judgment for the sum of both causes of action—$600. The judgment would be wholly void, although one of the causes of action was within the jurisdiction of the justice.

The case is not as it would have been if the court, having jurisdiction of the subject, had erred in its judgment. Nor is a party concluded by a judgment which, upon its face, shows that it was without the jurisdiction of the tribunal rendering it. I think the judgment of the district court in favor of the plaintiff should be affirmed. Upon the other questions considered in the opinion I concur.