H. W. CHILDS, Attorney General, ex rel. C. H. SMITH, Insurance Commissioner, v. FIREMEN'S INSURANCE COMPANY and Others.[1]

December 7, 1896.

Nos. 10,374—(49).

**Board of Fire Underwriters—Definition—Laws 1895, cc. 175, 178.**

Laws 1895, cc. 175, 178, not having defined the term "board of fire underwriters," reference must be had to the prior history of such organizations, in order to ascertain the legislative sense in which the term is used.

**Same—Membership—Incorporation.**

From such reference it appears that all corporations of that name were composed exclusively of those who for the time being were engaged in the business of fire insurance in the city where the board was organized; that all who were engaged in that business in such city were entitled to become members of it, or to have a vote in the transaction of its business; and that the incorporation of only one such board in the same city was authorized or contemplated.

**Same.**

The Minneapolis Board of Fire Underwriters and the Merchants' Board of Fire Underwriters were organized under G. S. 1878, c. 34, tit. 2 (G. S.

[1] Reported in 69 N. W. 141.

1894, §§ 2794–2804). Neither their articles of association, nor the statute under which they are organized, provide that their members shall be composed of those engaged in the business of fire insurance, or that others engaged in that business in the same city shall be entitled to become members, or have any voice in the transaction of the business of the associations. *Held*, that neither of them are boards of fire underwriters, within the meaning of the statutes referred to.

Information in the district court for Hennepin county against the Firemen's Insurance Company, Minnneapolis Board of Fire Underwriters, Merchants' Board of Fire Underwriters, and another, to recover from defendant insurance company a sum equal to 2 per cent. of the premiums received by it on its risks written in the city of Minneapolis in the year 1895, and to enjoin an action in the municipal court of Minneapolis in which the Merchants' Board, as plaintiff, and the Minneapolis Board, as intervenor, sought a recovery from the insurance company in the same cause of action. The answer of the insurance company admitted its liability, and prayed the court to determine to which board the amount due should be paid. Issues were framed between the Merchants' Board and the Minneapolis Board, which were tried before Elliott, J., who found that the sum of $60 was payable on account of such tax by the insurance company, and that each board was entitled to receive one-half thereof. From an order denying a motion for a new trial, the Minneapolis Board appealed. Affirmed.

*Cobb & Wheelwright* and *M. B. Koon*, for appellant.

*Freeman P. Lane, Matthew Gallagher*, and *C. J. Cahaley*, for respondent Merchants' Board of Fire Underwriters.

MITCHELL, J. This litigation grows out of "the salvage corps legislation" enacted at the last session of the legislature, which, so far as here material, is as follows:

"That boards of fire underwriters, incorporated by or under the laws of the state of Minnesota, shall have power to provide suitable rooms for the accommodation of salvage corps and fire patrols, and also to provide a patrol of men, and a competent person to act as superintendent, to discover and prevent fires, with suitable apparatus to save and preserve property or life at and after a fire; and, the better to enable them so to act with promptness and efficiency, full power is given such superintendent and such patrol to enter any building on fire, or which may be exposed to or in danger of taking fire from any

other building, subject to the control of the chief of the fire department of the city, and at once proceed to protect and endeavor to save the property therein, or to remove such property, or any part thereof, from such premises during and after a fire." Laws 1895, c. 178, § 1.

Also:

"When, by the laws of any other state or nation, any taxes, fines, penalties, licenses, fees, additional to or in excess of those imposed by the laws of this state upon foreign insurance companies and their agents, are imposed on insurance companies of this state and their agents doing business in such state, the same taxes, fines, etc., shall be imposed upon all insurance companies of such state and their agents doing business in this state, so long as such laws remain in force. Provided, that any insurance company of any other state or nation doing business in any city of this state wherein there is a duly-incorporated board of underwriters, that has organized a salvage corps as provided by statute, and such insurance company or its agents are not subject to taxation for the equipment and maintenance of said salvage corps under this section, then such insurance company or companies shall be subject to a tax equal to 2 per cent. on the gross amount of the premiums received by said company in such city, which sum shall be payable to the treasurer of said board of underwriters, and shall be by said board of underwriters used solely for the equipment and maintenance of said salvage corps; and such tax shall be in addition to all taxes, penalties, licenses, and fees provided in this act to be paid to the state of Minnesota by such insurance companies or their agents." Laws 1895, c. 175, § 84.

The controversy is now entirely between the Merchants' Board of Fire Underwriters and the Minneapolis Board of Fire Underwriters, as to which is entitled to the 2 per cent. on the gross amount of premiums received in the city of Minneapolis by the Firemen's Insurance Company, an Illinois corporation falling within the provisions of chapter 175, supra. The claim of the former, which, for the sake of brevity, we shall call the "Merchants' Board," is that each board is entitled to one-half of the fund, while the contention of the latter, which we shall call the "Minneapolis Board," is that it is entitled to the whole of it. The trial court held that each board was entitled to one-half of the fund, and from that decision the Minneapolis Board appealed.

Both boards purport to be incorporated under G. S. 1878, c. 34, tit. 2 (G. S. 1894, §§ 2794–2804). Their principal place of business is the city of Minneapolis. The general nature of the business of the Merchants' Board, as stated in its articles of incorporation, is "the promo-

tion of just and equitable practices between insurance companies doing business in the city of Minneapolis, Minnesota, and the assured of said city and state; the prevention of fires, the saving and preservation of property from injury and destruction by fire or water, the organization and equipment of salvage corps and fire patrols," whose duty it shall be to attend all fires, use their best efforts to extinguish them, and save and protect property at or after such fires.   The general nature of the business of the Minneapolis Board is stated in its articles to be "the organization and equipment of a salvage corps and fire patrols" for substantially the same purposes as those stated in the articles of the Merchants' Board.   The articles of each provide that the capital stock shall be $10,000, to be paid in as may be called for by the board of directors; the shares of stock to be 1,000, of the amount of $10 each.   In neither case do the articles contain any provision as to the qualifications of members or stockholders, or for any one except stockholders having any voice in the affairs of the corporation.   The Minneapolis Board was organized in April, 1895; and the Merchants' Board, in August of the same year.

The court below found that all the shareholders of the Minneapolis Board were at the time of its incorporation "in some manner engaged in the business of fire insurance in the city of Minneapolis," and that the incorporators of the Merchants' Board "were, with two exceptions, engaged in the fire insurance business, either as agents or directors of insurance business."   The contentions of the Minneapolis Board are:   (1) that the statute contemplates that there shall be but one board in each city, whose members must all be underwriters, and which shall have the management and control of salvage corps therein; and that, if there can be but one such organization, then its rights are superior because it was first in the field; (2) but that, in any event, the Merchants' Board has no standing in court, because (a) some of its incorporators were not underwriters; (b) its capital stock has never been subscribed for or taken.

In order to determine whether it was error, prejudicial to the Minneapolis Board, for the court to award half this fund to the Merchants' Board, the first question to be determined is whether the Minneapolis Board itself was legally entitled to any part of it, or, in other words, whether it is a "board of fire underwriters," within the meaning of the statute; for it is self-evident that, if the Minne-

apolis Board was not entitled to any of the money, it has no legal ground of complaint because it was only awarded half of it.

The statutes nowhere specifically provide for the incorporation of boards of underwriters, and our attention has not been called to any statute under which they may be organized, except the one under which these two boards were incorporated, to wit: G. S. 1878, c. 34, tit. 2 (sections 2794–2804, G. S. 1894), relating to private corporations for pecuniary profit, other than those authorized to take private property for public uses. The acts of 1895 do not define the term "boards of fire underwriters," but seem to adopt it as one already having a fixed and well-understood meaning. Therefore we are mainly relegated to the history and general character of such associations, in order, if possible, to ascertain the sense in which the legislature used the term. Of course, these two organizations cannot make themselves "boards of fire underwriters" merely by calling themselves such in their articles of association.

The word "underwriter" has an accepted and well-understood meaning. Borrowed from the early method of obtaining marine insurance, it has now acquired the meaning of any one who insures another, on life or property, in a policy of insurance. Hence, when the legislature used the term "board of fire underwriters," the presumption is that they meant a board composed exclusively of fire insurers; that is, of those engaged in the business of insuring others, on property, against loss by fire. If we refer to the previous history of such associations, we find that this was always the case. It is a matter of common knowledge that, prior to any legislation on the subject, associations called "boards of underwriters" (either fire or marine) existed in various cities. These were voluntary associations, composed exclusively of those engaged in that particular line of business Their general object was consultation and co-operation in matters affecting their common business, just as lawyers, physicians, jobbers, grocers, etc., form associations for a similar purpose. They often established, at their own expense, salvage corps. See 13 Enc. Brit. tit. "Insurance." Also Enc. Ins. U. S. 1894, 1895.

Those engaged in fire insurance have a private interest in the early discovery and extinguishment of fires, and in the protection and preservation of property at fires. But the public at large also have an interest in the same things. This seems to have led to legislation

in various states incorporating, or authorizing the incorporation of, boards of fire underwriters, with power to organize and maintain fire patrols and salvage corps, and providing for their support by an assessment, somewhat in the nature of a tax, upon all fire insurers doing business in the same city, based upon the amount of their gross premiums on business in such city. Power was given them, in the performance of their duties, to enter any building on fire, or in danger of taking fire from burning buildings. While on duty at a fire, they were placed under the control of the fire department. This delegation of a measure of police power, and the imposition of this assessment on the gross local premiums of fire insurers for their support, proceeded upon the theory that these boards were performing certain public duties, as to which they were quasi public municipal agencies. The earliest legislation on the subject which we have found was chapter 846, Laws 1867 (of the state of New York), entitled "An act to incorporate the New York Board of Fire Underwriters." In 1874 the state of Illinois passed a general law enabling boards of underwriters to establish a fire patrol and salvage corps. Starr & C. Ann. St. Ill. 1896, c. 142, pars. 1–4. By Laws 1876, c. 73 (Sanb. & B. Ann. St. § 1922 et seq.), the state of Wisconsin passed a similar law. See, also, Laws Mass. 1874, c. 61.

We have not had the time to pursue our researches further; but, in every instance cited, three marked characteristics will be found in all legislation on the subject: First, that these boards of fire underwriters were to be composed exclusively of those engaged for the time being in the business of fire insurance; second, that only one such board in any city was provided for or contemplated; third, that every one engaged in business as a fire underwriter or insurer in a city, and who was consequently liable to assessment for the support of the fire patrol and salvage corps, was entitled to become a member of the board, or (what amounted to the same thing) to a vote in all its meetings. The first of these requisites is necessarily implied in the very name, "boards of fire underwriters." The second is an imperative necessity, if such a board is efficiently to perform the public duties delegated to it by the statute. The third is not only just, but follows almost as a logical consequence from the second, because, if there can be but one such board in a city, all those who are assessed for its support ought to have a voice in the management of its affairs.

The acts of 1895 are mere fragments, borrowed mainly from the statutes of other states, but unfortunately very incomplete in their provisions, and without any pre-existing legislation to which they can well be attached. But, so far as they go, they are right in line with the generally accepted ideas as to the nature of boards of fire underwriters elsewhere. It was clearly contemplated that they should be composed exclusively of fire underwriters. The language of chapter 175 evidently contemplates but one such board, in any city, entitled to the assessment on insurance companies for the support of a salvage corps.

Let us consider briefly what the results would be if the contentions of either of these boards should be sustained. There is no provision in the articles of association of either board, or in the statute under which they are organized, that their members must be fire underwriters. It is purely accidental that all of the members of one board, and a majority of those of the other, were or are engaged in fire insurance in the city of Minneapolis or elsewhere. Not a single member of either board need be a fire underwriter, and by the transfer of stock, or other means, next week or next month, there may not be a single member of either board who is engaged in that business. If the contentions of the Minneapolis Board are correct, then, if there were one hundred fire underwriters in a city, three of their number, or, worse still, three men not engaged at all in that business, could, by organizing a company and calling it a board of fire underwriters, monopolize the ground, exclude from the association all underwriters in the city who are assessed for its support, and secure to itself the whole of the assessments imposed on all fire insurers subject to the provisions of the statute. On the other hand, if the contentions of the Merchants' Board are correct, then an unlimited number of such boards, not a single member of which need be a fire underwriter, might be organized in a city, each possessed of all the police powers conferred by the statute, and each entitled to a share of the assessment on insurance companies doing business in the city. The acts of 1895 certainly never contemplated any such results.

We are not called upon here to determine more definitely what would be a "board of fire underwriters," within the meaning of these acts, or whether there is any existing statute under which such a board can be incorporated; but of one thing we are satisfied, and that is that neither of these litigants is such a board, and hence that neither is le-

gally entitled to any part of this fund. Whether it was the result of carelessness or of design, the legislation of 1895 on this subject is exceedingly crude and imperfect; and, if construed as either of these parties contend for, its effect would be merely to create a fund, and then provide a corporation or corporations to absorb it, without any corresponding benefit either to the insurance companies, which pay the money in the first instance, or to the public at large, out of whom it comes in the end. In State v. Sheppard, 64 Minn. 287, 67 N. W. 62, it was admitted that the Minneapolis Board was possessed of all the powers and privileges conferred by Laws 1895, c. 178, and hence the questions now decided were neither presented nor considered.

As the appellant board has no legal right to any of this fund, it follows that it has no ground of complaint because it was awarded only half of it.

Order affirmed.