## SOUTHERN CASUALTY CO. v. FREEMAN.
### (No. 7260.) *

Court of Civil Appeals of Texas. Austin.
Nov. 28, 1928.

Rehearing Denied Dec. 19, 1928.

Horace C. Bishop and John T. Suggs, Jr., both of Dallas, for appellant.

Wood & Wood, of Granger, and King & York, of Austin, for appellee.

McCLENDON, J. Suit by Freeman against Southern Casualty Company to set aside a final ruling or decision of the Industrial Accident Board, declining to award Freeman compensation for injuries received while em-

*Writ of error granted.

ployed as a ginner by Fowler, who held a policy of insurance under the Workmen's Compensation Law (Rev. St. 1925, arts. 8306–8309), written by the Casualty Company. Fowler was sued in the alternative on his common-law liability. The trial was to a jury on special issues, which related only to the extent of Freeman's injuries and the measure of his compensation. Fowler was dismissed from the suit, and the appeal is by the Casualty Company from a judgment against it in favor of Freeman.

The question which controls the case is whether the insurance was in force at the time Freeman received his injuries. The facts upon this issue, which are without substantial dispute, follow:

Fowler operated a gin a few miles from Bartlett, in Bell county. Laughlin was local agent at Bartlett of the Ætna and possibly other insurance companies, but was not an agent of the Casualty Company. About September 17, 1926, Laughlin had some negotiations with Fowler with reference to a ginner's bond to be written by the Ætna. During these negotiations, the matter of workmen's compensation came up, and Fowler was anxious to have a policy written as soon as possible. On September 17, 1926, Laughlin wrote the casualty department of the Ætna at Dallas, inquiring if the company would write the insurance, and, if so, to send him blanks, and, "if not, please do the needful in furnishing the desired protection." At that time the Ætna was not writing this particular character of insurance, but there was a general arrangement by which Harris, who was in charge of the Dallas branch office of the Ætna, referred all business that his company did not write, and which the Casualty Company would write, to Harvill, who was agent for the Casualty Company at Dallas. This arrangement was merely a matter of accommodation on the part of Harris, who was actuated solely by his friendship for Harvill. Neither Harris nor the Ætna received any part of the premiums for business thrown to Harvill. In accordance with this arrangement, Harris referred Laughlin's letter to Harvill, who in turn furnished Harris blanks upon which application to the Casualty Company could be made, and certain instructions or directions to Laughlin.

On September 20th Harris transmitted these blanks to Laughlin, with a letter of instructions, in which it was stated that "the agent through which this business will be transmitted will possibly write the risk, and, if he does, it will be merely an accommodation, and he will require that a check for the advance premium accompany the application." The letter stated the amount of the premium, which was at the rate of $6.25 for each $100 of the payroll, but that, effective October 1, 1926, the rate would be increased to $7.37. It also stated: "Your commission will be 10 per cent., which can be deducted,

and you can remit for the net estimated premium." The blanks transmitted consisted of an order for policy and what was termed a daily report. This order, was addressed to the Southern Casualty Company at Alexandria, La., and read: "Effective this date, ———, you are hereby authorized to issue compensation policy for my or our protection under the Compensation Law of this state." This was followed by blank space for name and address of the applicant. The daily report contained a detailed description of the business of the employer and other data, on the reverse side of which was printed the standard workmen's compensation and employers' liability policy. It (the daily report) had blank spaces for the time when the term began and ended.

On September 28th, Laughlin presented these blanks to Fowler, and they were signed by him. The blank space for date, however, in the order for policy, was not filled, but in the daily report the following appeared: "The term begins on the 28th day of September, 1926, at midnight. The term ends on the 28th day of September, 1927, at midnight." At the end of this report, under the heading, "Copy of Signature to Proposal," appeared, "Proposal dated September 28, 1926, per Eugene Fowler." At the time these blanks were signed by Fowler, he gave Laughlin his check for the full amount of the premium. This check Laughlin at once cashed, and transmitted to the Ætna branch office at Dallas the blanks signed by Fowler, together with his own check in favor of Ætna or Harris for the amount of premium, less 10 per cent., which he retained. Harris at once turned over the blanks to Harvill. Freeman was injured on September 30th. On that day Harris wrote Laughlin, in substance, that the branch office of the Casualty Company was of opinion that "they have carried this risk before, and that the experience was very unsatisfactory," but that the file was not available, and it could not be determined whether the risk was acceptable. He therefore asked for a report upon the previous experience of Fowler with reference to accidents, and, if he had carried insurance in the Casualty Company, whether there had been any death loss. On October 1st Laughlin wrote Harris a very full report with reference to Fowler, which showed that he had never had any serious loss.

On October 6th, Raft, cashier of the Ætna Dallas branch office, wrote Laughlin, inclosing a workmen's compensation policy written by the Casualty Company, insuring the employés of Fowler. This policy provided that it should be in force "from 10—2—26 to 10—2—27." In all other respects it was identical with the policy attached to the daily report. In Raft's letter of transmissal, he stated that the minimum premium was $82, making a net balance due of $9.90. He called attention to the fact that in Mr. Harris' letter of Septem-

**150**

ber 30th he stated, if the policy was written before October 1st, the rate would be $6.25, and minimum premium $71. However, he stated that this rate would only be effective up to October 1st, at which time the new rate began, and a rider would on October 1st have to be attached to the policy, showing the new rate. The letter then reads: "So, rather than write the policy at the $6.25 rate and indorse it for the rate of $7.37, the Southern Casualty Company dated the policy October 2d, and used the $7.37 rate and the $82 minimum premium."

He requested check for the $9.90, which amount Laughlin collected from Fowler and transmitted to the Ætna Dallas branch. On October 20th the cashier of the Ætna Dallas branch transmitted a check to Harvill for $73.80, as "covering net deposit premium under above (Eugene Fowler) policy." In the negotiations between Harvill and Harris, the district agent or manager in Dallas of the Casualty Company was freely conferred with, either in person or over the telephone, by Harvill, and was fully aware of everything that was being done, and it was under his direction that Laughlin was called on for a report on Fowler as a risk before issuing the policy. The testimony shows that, when Laughlin obtained Fowler's application on September 28th, it was understood that Fowler should be protected from that date, and it was with that understanding that Fowler made the application and gave his check to Laughlin for the full amount of the premium, as called for in Harris' letter to Laughlin.

The Casualty Company contends that Laughlin was not its agent in the matter of taking the application for the policy, and had no authority, either express or implied, to bind it to a present contract of insurance; that Laughlin was either the agent of Fowler or an insurance broker; that the proposal transmitted by him was never accepted as binding upon the company from its date, September 28, 1926, and the only contract binding upon the company was the policy which it issued, which expressly provided that its liability should not begin until October 2, 1927, two days after Freeman sustained his injuries.

■ The trial court evidently took the view that, when the Casualty Company's agent furnished Harris the blanks for application, which provided on their face for insurance effective on the date of application and required advance payment in full of the premium, this constituted the Ætna agency the agent for the Casualty Company for the purpose of receiving the application and the premium covering an immediately effective insurance. We are inclined to agree with this view under the peculiar circumstances of this case, showing a general arrangement whereby one company would offer business to another, and receive in turn its blanks, with

authority to take applications and accept advance premiums.

We have reached the conclusion, however, that the trial court's judgment may be upheld upon another ground. The district agency of the Casualty Company had full authority to write the insurance, and that agency, if not cognizant of the original sending of the blanks to Laughlin, became fully aware of the facts and circumstances in the transaction as soon as the order and daily report reached Dallas. This order and daily report showed on their face the circumstances under which the application was made, and gave notice to the Casualty Company that the insurance applied for was to be effective on September 28, 1926.

In the recent case of Texas Employers' Ins. Ass'n v. Torpedo Co. (Tex. Civ. App.) 8 S.W.(2d) 266, this court, Associate Justice Blair writing, held that the Texas Employers' Insurance Association did not have the lawful right to select the risks it would cover with insurance, and could not therefore legally reject any application, where the applicant was entitled under the Workmen's Compensation Act to the protection afforded subscribers to the Employers' Association. We are strongly of the view that the same rule should apply to casualty and liability insurance companies who avail themselves of the provisions of the act, which accord them the privilege of writing this character of insurance. There is nothing in the act that would compel them to engage in this particular business, but when they voluntarily so engage it would appear that they should be held to do so under the same terms and conditions as are applicable to the Texas Employers' Insurance Association.

■ It is not necessary to decide this particular point in the instant case. Even if private companies engaging in this business are authorized to select their risks, and to reject at pleasure any applications made to them, still we think the uncontradicted evidence above conclusively shows that the insurance was in force on and after September 28, 1926. We cannot view the transaction as one between the Casualty Company and Fowler alone. Fowler, it is true, was obtaining the insurance in order that he might be relieved of all liability for injuries received by his employees in the course of their employment as the Act provides. But the insurance which took the place of his liability was for the benefit of his employees, and they became parties to the contract immediately it became binding on Fowler and the Casualty Company. When the application was received by the district office, showing upon its face that it was for insurance effective September 28, 1926, if the Casualty Company had the right to reject the application, it was its duty then to do so, and to give immediate notice to Fowler. Instead of this, it called for a report on Fow-

ler as a risk, thereby in effect accepting the application. It may be said that this acceptance was conditional upon the report on the risk proving favorable; but, even so, this was the only condition made at the time, and this condition, which was communicated by Laughlin to Fowler, was fulfilled because the report did prove favorable and was accepted as satisfactory to the company. This acceptance unquestionably related to the application as originally made, which called for insurance effective September 28th. At latest from the date of this acceptance, if not prior thereto, the company became bound by a contract of insurance effective September 28th, and this contract could not be abrogated, so as to defeat already vested rights of Freeman, except with his consent.

Nor is there anything in the record to show that Fowler ever agreed to have the policy bear a different period of coverage than that provided in the application, or that he accepted the policy so written. The Casualty Company had his money, based upon an application for insurance beginning September 28th. It had knowledge that he was then engaged in the ginning business, desired immediate protection under the Workmen's Compensation Act, and was relying upon his application and the payment of the premium for that protection. Even if it be conceded that Fowler and the Casualty Company might have subsequently made a contract for a policy effective October 2d, we are clear in the view that this could not be done to the detriment of Freeman's rights already accrued. Whatever, therefore, might have been the rights of Fowler and the Casualty Company with reference to changes in the insurance as to date or otherwise, we think it clear that the acceptance of the application on October 2d by the Casualty Company bound the latter, under the full terms of the policy and the Workmen's Compensation Act, from the date of the application to date of acceptance, and that Freeman's rights then accrued could not be defeated by the issuance of a policy effective October 2d, although that policy may afterwards have been accepted by Fowler. We therefore hold that the insurance was in force at the time of Freeman's injuries.

Complaint is made of the overruling of exceptions to the joinder of Fowler as a party defendant. The trial court dismissed Fowler from the case, and assessed all costs of making him a party against Freeman. This cured any error in overruling these exceptions. Since the question of the Casualty Company's liability was not submitted to the jury as an issuable fact in the case, we can see no prejudice the Casualty Company could have suffered by reason of the allegations and proof touching the common-law liability of Fowler. The same is true of certain argument of counsel which is complained of. The only

issue submitted to the jury was with reference to the extent of Freeman's injuries and his average wage, and we are unable to see in what way these allegations, proof, and argument of counsel could have deleteriously affected the Casualty Company's right in a determination of those issues. .

The trial court's judgment is affirmed.

Affirmed.