# MAX YOSELOWITZ v. PEOPLES BAKERY, INC. AND OTHERS.[1]

January 14, 1938.

No. 31,444.

*Homer Gannaway,* for relator employe.

*Leonard, Street & Deinard,* for relator Peoples-Lehman Baking Corporation.

[1]Reported in 277 N. W. 221.

*L. N. Foster* and *E. A. Linnee,* for respondents Peoples Bakery, Inc. and Travelers Insurance Company.

*Sweet, Johnson & Sands,* for respondents Lehman & Sons, Inc. and Casualty Reciprocal Exchange.

PETERSON, JUSTICE.

Yoselowitz, the employe, received compensable injuries while working in the bakery of the Peoples-Lehman Baking Corporation, on March 20, 1936. For some 20 years prior to that date he had been employed in different bakeries in North Minneapolis, among which were the Peoples Bakery, Inc. (to be referred to as Peoples) located at 1016 Sixth avenue north, the concern by which he was principally employed until shortly before the accident. Another bakery, Lehman & Sons, Inc. (to be referred to as Lehmans) was situated next door to Peoples, at 1026 Sixth avenue north. On December 8, 1935, a new corporation was incorporated by a number of individuals, most of whom were stockholders of the two named corporations, under the name of Peoples-Lehman Baking Corporation (to be referred to as the new corporation), which commenced business on March 14, 1936, at its bakery at 1801 Plymouth avenue north, which is several blocks distant from the Peoples bakery on Sixth avenue. Yoselowitz was injured on the third day he worked. In his petition he claimed that he was employed by all three of the named corporations, and all three answered. The issues were: (1) By whom was Yoselowitz employed; and (2) what insurer, if any, carried the workmen's compensation insurance risk. The commission made a decision that Yoselowitz was employed by the new corporation and that it did not carry workmen's compensation insurance covering the risk. Upon application of the new corporation the decision was vacated, a rehearing granted, and a new decision was made, identical with the first one. The employe and the new corporation petition for review and raise the same issues here, which will be stated more fully in considering them. The findings of the commission upon a question of fact must stand unless the evidence and inferences permissible therefrom require a reasonable mind to adopt a conclusion contrary to that of the commission.

602

Jeffers v. Borgen Chevrolet Co. 199 Minn. 348, 272 N. W. 172; Whalen v. Buchman, 200 Minn. 171, 273 N. W. 678.

. ■ The first question is, by whom was the employe employed? The new corporation contends that he was employed by Peoples; that he had been so employed during most of the preceding 20 years and immediately prior to his working in the bakery of the new corporation; that he took orders from certain bosses at Peoples who told him when to report to work and what to do; that he knew nothing of the new corporation; that he reported to work at the bakery of the new corporation at 1801 Plymouth avenue pursuant to orders of the old bosses at Peoples, whom he was accustomed to obey, supposing and believing all the time that he was working for Peoples and not for the new corporation. It invokes the rule that the relation of employer and employe is contractual, specifically so declared for purposes of the workmen's compensation act, and that the contract of employment cannot be changed so as to substitute a new employer without the employe's knowledge and consent, citing Benson v. Lehigh Valley Coal Co. 124 Minn. 222, 144 N. W. 774, 50 L.R.A.(N.S.) 170; Melhus v. Sam Johnson & Sons Fisheries Co. Inc. 188 Minn. 304, 247 N. W. 2; Dahl v. Wunderlich, 194 Minn. 35, 259 N. W. 399; Murray v. Union Ry. Co. 229 N. Y. 110, 113, 127 N. E. 907; and many other cases. The gist of the rule invoked is stated by Mr. Justice Cardozo in Murray v. Union Ry. Co. *supra,* cited by us with approval in Dahl v. Wunderlich, *supra:* "The new relation cannot be thrust upon the servant without knowledge or consent." The rule also is that the relation of employer and employe may be terminated at any time by agreement of the parties. If the employe has notice or knowledge of the substitution of a new employer and thereafter continues in his employment, he will be deemed to have accepted the new employer and to have terminated the relation previously existing with the old one. Benson v. Lehigh Valley Coal Co. and Murray v. Union Ry. Co. *supra.* The decision of the commission is predicated upon a finding that there was such a change of employers. The evidence justifies such a finding on the grounds either of actual knowledge, or facts from which notice of such change of employers could be inferred. The

evidence tends to show that before the new corporation commenced operations its president was with the Peoples; that preparations were made to discontinue the business of Peoples upon the commencement of operations by the new corporation; that the president of the new corporation, as he testified, told all of the men, which includes Yoselowitz, that he would try to find positions for them with the new company; that when Peoples and Lehmans ceased doing business and the new corporation commenced operations, Yoselowitz came to its place of business and applied for a position which was given to him; that at the first hearing both Yoselowitz and the new corporation's president positively testified that the former was employed by the new corporation and by no one else. Other evidence given by the employe was that he knew that Peoples went out of business; that the new corporation took over the business of Peoples and Lehmans; that it occupied a building bearing the new firm sign, with which he was familiar; that there were several new men with some of the men from Peoples in charge; and that he accepted a new employment when he went to work there on March 18. On the rehearing he materially changed his testimony, but the whole record supports the finding of the commission.

■ The new corporation contends that, although no new contract of insurance was thereby effected, the insurance carried by the old corporations was "extended" through the Minnesota Rating Bureau so as to cover its compensation risks, by giving notice to the bureau that the new corporation had taken over the business of the two old corporations and requesting the bureau to put their insurance in one policy to cover the new corporation. Counsel frankly concede that this contention is inconsistent with that of employment of Yoselowitz by Peoples, involving as it does the assumption of his employment by the new corporation.

The policies issued by Travelers to Peoples and by Casualty Reciprocal Exchange to Lehmans, while risks assigned to said companies pursuant to L. 1929, c. 237, 3 Mason Minn. St. 1936 Supp. §§ 3634-1 to 3634-5 (amended by L. 1937, c. 175), contained the usual and customary provisions found in workmen's compensation insurance policies. They were not different from policies issued to

cover risks not so assigned pursuant to the statute. The insurer's liability under the statute is coextensive with that of the employer. Skuey v. Bjerkan, 173 Minn. 354, 217 N. W. 358; Stitz v. Ryan, 192 Minn. 297, 256 N. W. 173, 94 A. L. R. 885; note, 45 A. L. R. 1329. The coverage of workmen's compensation insurance is that stated in the policy. The insurer is not liable for a risk which he did not insure. The policy risk is confined to the employes of the insured and does not include employes of other employers. 71 C. J. pp. 912, 913; Dahl v. Wunderlich, 194 Minn. 35, 259 N. W. 399. Each of the policies contains a provision against assignment without the insurer's consent. In such a case the contract is a personal one. The benefits thereof do not extend to a successor of an insured employer corporation even though the successor was organized for the express purpose of taking over all the assets and business of the insured. 8 Couch, Insurance, § 2056, note 25; White v. Maryland Cas. Co. 139 App. Div. 179, 123 N. Y. S. 840; Germano v. Gresham F. & A. Ins. Soc. Ltd. [1924] Vict. L. R. 592, 13 B. R. C. 157. Of course in certain cases the insurer may be estopped from denying that the policy was assigned to a successor of the insured, but the estoppel arises independently of the right of succession and is based purely on principles of estoppel, Compton Heights Laundry Co. v. General F. & L. Assur. Corp. Ltd. 195 Mo. App. 313, 190 S. W. 382, but this is not such a case.

The new corporation is a separate, distinct legal entity. Although the new corporation was organized on December 8, 1935, and commenced operation on March 14, 1936, Peoples continued to do business until April 7, 1936, although it quit baking operations on March 13, 1936. It does not appear when Lehmans quit operations, but it does appear that it continued to do business until at least March 13, 1936, and it did not cancel its policy with Reciprocal Casualty Exchange until April 7, 1936. There was no merger or consolidation as a matter of law. As a matter of fact the new corporation was not regarded as such. In fact, Lehmans took out a new policy of workmen's compensation insurance to cover its risks on January 8, 1936, and Peoples had a policy taken out on April 7, 1935, which expired on April 7, 1936. Certainly such con-

duct is inconsistent with the idea that the corporations ceased to exist by being merged or consolidated with another corporation.

The workmen's compensation insurance of the old corporations could not be "extended" to the new corporation without effecting an entirely new contract of insurance, because there was necessarily involved the substitution of a new insured and a new risk. This could not be done so as to bind the insurer unless the bureau were its agent, authorized so to contract in its behalf. Therefore, notice and request to the bureau to extend the policies did not bind the insurers unless the bureau was their agent. Even if it be conceded that the bureau was agent of the insurers for certain purposes, it does not follow that it had the power to extend insurance policies in their behalf so as to include a new insured and a new risk. Insurance could be effected by the bureau only by the designation of a carrier pursuant to statute as hereinafter explained. The contention is that extending the insurance was a mere formal matter, such as the assignment of fire insurance to a purchaser of property; but even in such a case authority to consent to a change or to waive any term in an existing contract of insurance must be shown. Cobel v. Hartford F. Ins. Co. 154 Minn. 233, 191 N. W. 592.

It is claimed that the bureau was the agent of all insurers with power to represent them in writing compensation insurance, first, because it was authorized as such by statute and, secondly, because it was constituted such agent by acts of the insurers. The workmen's compensation law compels employers to insure all workmen's compensation risks either by self or carrier, and regulates the insurance of such risks as to form of policy, premium rates, coverage, and other particulars. Two agencies are created by L. 1921, c. 85 (amended by L. 1931, c. 353, 3 Mason Minn. St. 1936 Supp. § 3612) to accomplish these purposes. They are the compensation insurance board, an official body whose functions are to secure solvency of insurers and adequate and reasonable premium rates for compensation insurance, and the compensation insurance bureau, which is subject to the control and supervision of the board and which is an association composed of all insurers doing workmen's compensation insurance business in the state, membership being compulsory by

statute and the functions of which are rate making, administration, and placement of rejected workmen's compensation risks. The rate-making function consists principally of classification of industries and assisting the board and insurers in making and approving rates. The administration relates principally to inspection, surveys, analysis of risks, gathering information as to the experience of insurers in the application of rates, and the maintenance of records. The placement of rejected risks is the designation, pursuant to statute, L. 1929, c. 237 (since amended by L. 1937, c. 175) of member insurers as carriers of specified risks unable to obtain voluntary insurance. The objects sought to be achieved are the insurance of all compensation risks in solvent carriers for the protection of employer, employe, and the public, to insure fair, adequate, and reasonable premium rates, and to prevent rebates and discrimination. In these matters the public has an interest. Employer's L. A. Corp. v. Success-Uncle Sam C. Co. 124 Misc. 614, 208 N. Y. S. 510. It is obvious that the compensation insurance bureau is a quasi public agency with powers suitable to accomplish the purposes for which it was created. It is not the agent of the insurers only in respect to the powers conferred upon it by statute. Boards of underwriters and organizations of insurers organized along somewhat similar lines have been held to be quasi public agencies. Childs ex rel. Smith v. Firemen's Ins. Co. 66 Minn. 393, 69 N. W. 141, 35 L. R. A. 99; Employer's L. A. Corp. v. Success-Uncle Sam C. Co. *supra.* Being the creature of statute and a quasi public agency, it has only the powers and duties conferred upon it by law. 5 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 7998.

We need consider only in this connection the bureau's power to designate carriers of rejected risks under the statute. It is not a general insurance agency with powers possessed by general insurance agents to represent insurance companies, write insurance, transfer policies, receive notices, and represent companies in connection with business handled through it by them. No such agency was ever contemplated, and the bureau is not such. L. 1929, c. 237, provides that insurers carrying compensation insurance who are members of the rating bureau are under a duty to insure and accept

any workmen's compensation risk if designated to do so by the bureau in the manner provided in the statute, which is that if a risk be tendered and rejected by three members of the bureau it may be assigned to a carrier if it appears that the applicant is in good faith entitled to coverage. Upon having its attention called to the matter, it is the duty of the bureau to fix the initial premium and designate the member whose duty it shall be to issue a policy of insurance to the applicant, containing the usual and customary provisions found in such policies. The bureau has adopted rules pursuant to the statute, which then provided that the applicant shall submit a verified application on a form prescribed by the bureau, containing information pertaining to the particular employer, three letters of declination from compensation insurers stating that they have declined to insure the particular risk, and a certified check or money order payable to the bureau to cover the initial premium, following which the bureau then designates and notifies one of its members to insure the particular risk, effective at 12:01 a. m. the day following. All compensation insurers are members of the bureau and are required by the statute to file their consents authorizing the bureau to act in their behalf in accordance with the provisions of the statute. This procedure was followed by Peoples and Lehmans in obtaining the old policies referred to. On March 26 the new corporation complied with this procedure, by which the risk was assigned to the Liberty Mutual Insurance Company, which issued a policy on that day, effective at 12:01 a. m. March 27, 1936.

The authority of the bureau being wholly statutory, it must be exercised in conformity to the statute. 5 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 7998; Kipp v. Dawson, 31 Minn. 373, 17 N. W. 961, 18 N. W. 96; Murray v. Zook, 205 Ind. 669, 187 N. E. 890, 90 A. L. R. 321; Rockne v. Olson, 191 Minn. 310, 254 N. W. 5. Full compliance with the terms of the statute was requisite to authorize the bureau to designate a carrier. Whether the statute be mandatory or directory in its requirements is not controlling. The statute commands obedience, otherwise it would not have been enacted. The rule by which statutes are held to be directory as to

certain requirements is to sustain action after the act against failure to comply with the statute in certain respects, but never to compel noncompliance in any respect before the act. It would seem to be the duty of courts to compel obedience, not disobedience, to the commands of the statute and to sustain action justified by insistence on compliance with law. Kipp v. Dawson, *supra*. The new corporation, prior to March 26, 1936, by noncompliance with the statute failed to perfect a right to have a designation of an insurer made for it by the bureau. Where an employer is entitled to a designation, he can compel designation under the statute by *mandamus*, Texas Employers' Ins. Assn. v. U. S. Torpedo Co. (Tex. Com. App.) 26 S. W. (2d) 1057; Russell v. Texas Employers' Ins. Assn. (Tex. Civ. App.) 61 S. W. (2d) 553; Southern Casualty Co. v. Freeman (Tex. Civ. App.) 13 S. W. (2d) 148; but *mandamus* will be denied where it is shown that the petitioner has not complied with the provisions of a statute or ordinance which are conditions to his right to the action demanded. Edwards Mfg. Co. v. Farrington, 102 Me. 140, 66 A. 309; State ex rel. Morton v. Hauser, 17 Ohio App. 4; Doble Steam Motors Corp. v. Daugherty, 195 Cal. 158, 232 P. 140; R. & B. Realty & Construction Co. Inc. v. Jelleme, 2 N. J. Misc. 356, 130 A. 365; 38 C. J. p. 575, § 49. The mere giving of notice that the new corporation was to take over the business of the old ones and a verbal request to place the insurance in one company was not a compliance with the statute and did not impose any duty on the bureau to make a designation. The bureau was without power under the statute to extend or transfer the existing policies. Counsel have been unable to find a case involving this precise question but cite a decision of the industrial commission of Virginia, Atlas Building Wreckers, Inc. employer, Mrs. LeRoy Davis, claimant, Liberty Mutual Insurance Company, insurer, decided June 17, 1936, which is in accord with the views here stated.

■ It is claimed also that the bureau was the agent in fact, if not by statute, of the insurers. This is said to result not only from the provisions of law which we have already considered, but also because the bureau in fact acted as agent of the insurance companies. It is not necessary for us to consider whether the bureau

might have been authorized by its members to act as their general insurance agent. See Pennsylvania F. Ins. Co. v. Gold Issue Min. Co. 243 U. S. 93, 37 S. Ct. 344, 61 L. ed. 610. The written authorizations filed by the companies authorized it simply to act for them in their behalf as provided in the act. It is claimed that the bureau in fact acted as general agent. An examination of the record discloses that the claim is without foundation. As far as the decision of the commission is predicated upon such a finding, it is sustained by the evidence. If the finding were otherwise in this respect it could not stand because there is no evidence in the record to support it.

The finding of the commission that the new corporation did not have compensation insurance coverage is sustained.

The employe also seeks a review of the decision. He says that he is entitled to recover from one of the three corporations. The new corporation only is liable, and the employe will recover compensation from it.

The findings of the commission are sustained.

Affirmed and writs discharged.

The employe is allowed $50 attorney's fees in this court.

MR. JUSTICE STONE took no part in the consideration or decision of this case.

