## TEXAS EMPLOYERS' INS. ASS'N v. UNITED STATES TORPEDO CO.
### No. 1063—5280.

Commission of Appeals of Texas, Section B.
April 23, 1930.

Black & Graves, of Austin, for plaintiff in error.

Ben W. Tipton, of Electra, for defendant in error.

LEDDY, J.

This is a suit for mandamus instituted by defendant in error in the district court of Travis county, to compel plaintiff in error, Texas Employers' Insurance Association, to issue a policy of insurance, in accordance with the terms of the Workmen's Compensation Act (Rev. St. 1925, arts. 8306–8309, as amended), covering defendant in error's employees. The petition contained all the necessary averments to entitle defendant in error to the writ, unless plaintiff in error had the right to decline to issue such policy, as it did, upon the ground that the business in which defendant in error was engaged was a very hazardous one, and that it was its privilege under the law to decline such risk.

The trial court awarded the writ, and its judgment was affirmed by the Court of Civil Appeals. 8 S.W.(2d) 266.

Plaintiff in error contends that it has the same right as any other insurance company, engaged in writing policies under the Workmen's Compensation Act, to select the risks which it will cover with its policies of insurance, and, in the process of selection, may properly consider whether the particular risk is a desirable one.

Defendant in error insists that plaintiff in error was created under the Workmen's Compensation Act as an agency for the purpose of insuring those brought within the terms of the act; hence it should not be permitted to reject the application of any employer to become a subscriber merely because it regards the risk as an undesirable one.

█ A careful consideration of the scope and purpose of the Compensation Act leads to the inevitable conclusion that plaintiff in error is required by the plain terms thereof to issue policies of insurance to those employers required by the act to suffer the penalty of being deprived of their common-law defenses in all actions against them by their employees for damages for personal injuries received in the course of their employment.

The effect of the Compensation Act is to deprive defendant in error, in any suit against it by an employee for damages for personal injuries, from availing itself of the defenses

that such injuries were due to the employee's contributory negligence, or from a risk assumed by him or because of the negligence of a fellow servant. The provision in this regard (article 8306, R. S. 1925) is general and applies to all actions brought by employees or their dependents against their employers for personal injuries or injuries resulting in death. The only employers of labor who are excepted from the operation of this law are specified in section 2 of this article.

The entire act may be searched in vain for any provision which would operate to prevent the taking away of defendant in error's common-law defenses because of its inability to obtain a policy of insurance in compliance with the terms of the act. The purpose is plainly declared that any employer whose defenses are abolished by the terms of the act is entitled to the benefit of the insurance provision. Section 7, art. 8308, provides:

"*Any employer of labor* in this State may become a subscriber except as provided in Section 2."

Section 2 referred to is that provision which exempts certain employers of labor from the provisions of the law, defendant in error not being included within such exemption.

If plaintiff in error may deny defendant in error the benefit of insurance protection, because it regards the business in which it is engaged as being extra hazardous, then it may refuse to issue policies to numerous other employers of labor whom it does not consider as desirable risks on account of the hazards of their business, even though such employers are within the terms of the act and their common-law defenses have been abolished by its plain and specific terms.

While the Legislature undoubtedly possessed authority to take away the common-law defenses of contributory negligence, fellow servants, and assumed risk in all actions for damages for personal injuries or injuries resulting in death, we think it could not be seriously urged that it might lawfully abolish such defenses for certain employers and confer upon them the benefit of the insurance feature provided by the Workmen's Compensation Act and at the same time abolish such defenses as to other employers of labor who could not obtain the benefit of such insurance.

The legislative purpose is manifest that a risk, whether extra hazardous or not, must be assumed by the association. It has been held by our courts that this association was created for the sole purpose of carrying out the provisions of this law. Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S. W. 556. Nowhere in the act do we find any provision which may be construed as conferring a right on the association to refuse risks because of the hazards involved. In fact, no attempt whatever is made to classify the character of risks which the association is expected to insure. The failure to make some provision for such classification is very persuasive that it was intended the association should protect by its policies all employers who are by the mandatory terms of the law required to obtain insurance or suffer the abolishment of their common-law defenses in actions for damages brought against them by their employees.

That it was expected the association would be compelled to issue policies involving varying degrees of risk and hazard is made clear from section 13, art. 8308, part 3, wherein it is provided:

"The board of directors may distribute the subscribers into groups for the purpose of segregating the experience of each such group as to premiums and losses, and for the purpose of determining dividends payable to and assessments payable by the subscribers within each group, but for the purpose of determining the solvency of the association, the funds of the association shall be deemed one and indivisible. The board of directors shall have power to re-arrange any of the groups by withdrawing any subscriber and transferring him wholly or in part to any group and to set up new groups at its discretion."

The object of the above provision was to permit the association to adjust its premiums among its subscribers to the losses, based on the different degrees of hazards assumed under the policies which it was required to issue. This purpose is further revealed from a portion of section 16, part 3, which provides:

"*Dividends and assessments shall be fixed by and for groups,* but the entire assets of the association, including the liability of the subscriber to assessment within the limits fixed by the by-laws or by special agreement in writing as authorized, shall be subject to the payment of any approved claim * * * against the association."

These stipulations strongly indicate the Legislature contemplated that the association created by it should be required to issue policies to employers whose business involve varying degrees of risk and hazard. Provision was thus made to afford protection to the association by permitting it to declare dividends in favor of and levy assessments against specific groups. Under such scheme employers engaged in an extra hazardous business would be compelled to pay a premium commensurate with such hazard.

But it is said, if the Compensation Act be so construed that the Texas Employers' Insurance Association is required to accept all risks coming under its terms, the practical result would be that it would be forced to carry all extra hazardous risks, and private insurance companies would only accept less hazardous ones, while at the same time they

would be permitted to charge the same rates of premiums as charged by the association, and thus a legislative advantage would be given such companies.

We are unwilling to give assent to the assumption that a private insurance company has the privilege under the terms of the act to select the risks which it will cover by its policies. While it is true the Legislature has no power to require private insurance companies to issue policies of insurance to employers under the Workmen's Compensation Act, yet we have no doubt of its authority to require such companies, who may desire to avail themselves of the privilege of writing such policies, to comply with the terms of the act and give protection to all who are entitled to be covered by policies of insurance. We think a fair construction of this act requires any insurance company desiring to avail itself of the privilege of writing policies in accordance with its terms to stand on the same footing as the agency specially designed to carry out the objects and purposes of the act. Section 1, art. 8309, part 4, of the act contains the following provision:

" 'Association' shall mean the 'Texas Employers' Insurance Association' *or other insurance company authorized under this law to insure the payment of compensation to injured employees or to the beneficiaries of deceased employees."*

It will be noted that the authority conferred upon private insurance companies is not merely a right to issue policies thereunder, but the right given is defined as the "same right" as that granted the Texas Employers' Insurance Association. Section 2, art. 8309, part 4.

Construing these provisions in connection with the objects and purposes sought to be accomplished by the passage of this law, we think it reveals a legislative design to place all insurance companies seeking to issue policies under the terms of the Workmen's Compensation Act in the same position as the Texas Employers' Insurance Association, and requires them, if they desire to issue any policies under the act, to cover all employers who are entitled to become subscribers thereunder.

Naturally we should assume that the Legislature did not intend by the passage of this law to so legislate as to give private insurance companies an undue or unfair advantage over the very agency it created for the purpose of carrying out the provisions of the compensation law. It will be noted that private insurance companies are required to charge and collect premiums on policies issued by them under this law in a sum not less than those charged by the association. If it had been the intention of the lawmaking body that the association was compelled to accept extra hazardous risks, and private companies were not required to do so, evidently it would not have prohibited such companies from writing the policies issued by them at a lower premium rate than that charged by the association.

In conclusion, we agree with the observation made by Chief Justice McClendon, of the Third Court of Civil Appeals, in Southern Casualty Co. v. Freeman, 13 S.W.(2d) 148, 150, in commenting upon the decision of that court in this particular case, to the effect that "the same rule should apply to casualty and liability insurance companies who avail themselves of * * * the privilege of writing this character of insurance. There is nothing in the act that would compel them to engage in this particular business, but when they voluntarily so engage it would appear that they should be held to do so under the same terms and conditions as are applicable to the Texas Employers' Insurance Association."

Defendant in error was entitled to the issuance of the mandamus awarded; hence we recommend the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J.

The judgment of the Court of Civil Appeals is affirmed, as recommended by the Commission of Appeals.