**RUSSELL et al. v. TEXAS EMPLOYERS' INS. ASS'N.**

No. 12796.

Court of Civil Appeals of Texas. Fort Worth.

March 18, 1933.

Rehearing Denied April 22, 1933.

Weeks, Morrow & Francis, of Wichita Falls, Grindstaff, Zellers & Hutcheson, of Weatherford, and Ben W. Tipton, of Electra, for appellants.

Boone & Duff, of Wichita Falls, and Wm. M. Cramer, of Dallas, for appellee.

LATTIMORE, Justice.

The United States Torpedo Company, hereinafter named as the insured, was engaged in the manufacture of dynamite and the shooting of wells. In 1928 it made application to appellee for workmen's compensation insurance, which was declined because the appellee did not wish to insure against such hazardous type of work. The insured obtained in the Supreme Court of Texas—Texas Employers' Ins. Ass'n v. U. S. Torpedo Co., 26 S.W.(2d) 1057—a favorable decision compelling the issuance of such policy upon insured complying with the laws governing its becoming a subscriber. Thereafter insured, on the acquiescence of appellee, as a proper course, made a new application to appellee on November 24, 1930, for workmen's compensation insurance to extend one year.

Premiums are computed on pay roll. It seems that in the trade in appellee's business "advance premium" means the probable entire premium paid in advance for the future term of the policy, while "deposit premium" means merely to keep in force for a portion of such term, the policy, which provided for cancellation on short notice. From the fact that several different applications for policies at different times and to different insurance companies are shown, each accompanied by a payment of only a portion of the advance premium, we judge it was the custom to issue workmen's compensation policies to customers satisfactory to them, upon down payment of similar "deposit" premiums and thus obtain the insurance pending some further arrangements as to the determination of the exact amount and for the payment of same. This is not forbidden, See article 8308, §§ 14 and 15, R. S. of 1925; Stadtler v. Southern Surety Co. (Tex. Civ. App.) 253 S. W. 681.

This application contained a purported statement of the pay roll and of rates as fixed

by the insurance department of Texas and attached thereto was insured's check to one-tenth of such estimated amount of total premium marked "estimated advance premium," which check was returned by appellee with the statement that it could be accepted only as a "deposit" premium, and then only to be applied on a policy of date March 7, 1928, and upon payment forthwith of the premiums upon pay roll down to the date of said November 1930 application, and that upon payment of said claimed past due indebtedness and a proper deposit premium the appellee stood ready to issue the policy. All this was, as stated in the letter, on the theory that the appellee had been an insurer of insured during the two years it had been resisting in the courts the right of insured to compel it to issue insured a policy of workmen's compensation insurance.

This full back premium insured declined to pay and while negotiations thereon were yet in progress, J. B. Russell, an employee of insured, was killed under circumstances raising the issue of liability to appellant of one carrying workmen's compensation insurance upon insured. Upon a trial the learned judge below instructed a verdict for appellee.

■ Now appellant presented testimony sufficient at least to make a jury issue that after the controversy on this last application arose insured called on the insurer to inquire if, aside from the issue of unpaid premium on pre-existing insurance, if any, the tender was sufficient as a deposit premium to procure the insurance and was assured that it was and that the sole objection was the nonpayment of the old claim. The fact that the appellee had carried a previous policy of insurance for insured which had not been paid for cannot affect its right to another policy of workmen's compensation insurance provided it complies with the requirements of the statutes. If the appellee could not refuse the policy because of the kind of work of the applicant, neither could it refuse because of the kind of debts it owed, if any. The reasoning of the Supreme Court—Texas Employers' Ins. Ass'n v. U. S. Torpedo Co., 26 S.W.(2d) 1057—calling attention to the fact that the law takes away from the nonsubscriber certain rights thus giving an applicant corresponding rights to have the insurance on complying with the statutory procedure for becoming such subscriber, is equally applicable to this case. The appellee could no more add to the requirements authorized by the statutes than the applicant could detract from the penalties of the law for nonsubscription. Article 8309, § 1, R. S., says the employer may become insured by "paying the required premium" to one licensed to engage in such insurance. To require payment of premium on some other policy is not named in the statutes as a prerequisite to obtaining the insurance now applied for. A

remedy exists to collect the other premium but that remedy is not by refusing new insurance. If the insured "owed the premium in 1917 and has not paid it, he still owes it, and appellant can collect it." Home Life & Acc. Co. v. Orchard (Tex. Civ. App.) 227 S. W. 705, 707, but that court held the policy enforceable none the less. If appellee agreed that the deposit was sufficient in amount to authorize the issuance of the policy, then present tender of the full premium was waived. In addition to the testimony of Tipton, which alone was sufficient to raise the issue, we note that the original litigation in 1928 was on a "deposit premium" and that appellee accepted it as sufficient. Moreover, appellee's defense to this suit, while claiming the premium tender insufficient, is that another policy was binding by a similar deposit premium tender which prior balance it insisted must be paid first. All of these facts and circumstances raised the issue of a sufficient tender of premiums, which issue was not eliminated by the fact that the premium on the former policy had not been paid.

■ Appellee says further that the application sets out the rate on which the premium was computed, and that same is incorrect and is much below the rate prescribed by the insurance commission. Probably no good purpose would be served to set out at length the testimony. The appellee produced the insurance commissioner who is chairman of the commission, and his testimony bears out the contention of appellee. The records identified by him as being those on which his statements were based, raised some doubt as to whether the high rate fixed by the insurance commission, being on employees engaged in the hazardous handling of explosives, applied to some of the employees whose work did not expose them to such hazard. Moreover, the provisions of articles 8308 and 8309, R. S., are replete with machinery for investigation to establish definitely the amount of the premium and show clearly that it was the intention of the Legislature that the exact amount could be determined after the policy was issued and in some cases cannot be exactly determined until the policy has expired. The advance premiums being based on as changeable a thing as pay rolls are in the very nature of the business only an estimate. When taken into consideration with the facts above quoted that appellee made no objection to the issuance of the policy, other than the nonpayment for the prior insurance, it raised at least a jury question of waiver of any further advance payment of premiums.

■ It is shown that no notice of insurance was given by insured as required by article 8308, § 18a, R. S. A money penalty is imposed for nonperformance with this statute. Compliance is not a condition precedent to the policy becoming valid, nor would noncompliance of itself avoid a policy once written.

From what we have said it is apparent that the learned trial court fell into error in instructing a verdict for appellee.

The judgment of the trial court is reversed, and the cause remanded to the trial court.