TEXAS EMPLOYERS INSURANCE ASSOCIATION V. MRS. MARANDA RUSSELL ET AL.

No. 6567.   Decided February 26, 1936.
Rehearing overruled April 15, 1936.
(91 S. W., 2d Series, 317.)

*T. R. (Dan) Boone,* of Wichita Falls, *Lawther, Cox & Cramer,* and *Wm. M. Cramer,* all of Dallas, for plaintiff in error.

Where the plaintiffs failed to show that the United States Torpedo Company ever had a policy of workmen's compensation insurance issued to it by the Texas Employer's Insurance Association an instructed verdict for the plaintiff in error was proper, and the Court of Civil Appeals was in error in reversing the trial court's judgment for plaintiff in error herein. Mingus v. Whatley, 285 S. W., 1084; Galveston, H. & S. A. Ry. Co. v. Johnson, 74 Texas, 256, 11 S. W., 1113; W. L. Moody & Co. v. Rowland, 100 Texas, 363, 99 S. W., 1112.

*Grindstaff, Zellers & Hutcheson,* of Weatherford, *Weeks, Morrow, Francis & Hankerson,* of Wichita Falls, and *B. W. Tipton,* of Electra, for defendants in error.

A proper application and tender having been made by the Torpedo Company the insurance association did not have the right to reject it, as its acceptance is a matter of law and the torpedo company was entitled to the policy evidencing the contract created. Texas Emp. Ins. Assn. v. United States Torpedo

Co., 26 S. W. (2d) 1057; Texas Ind. Ins. Co. v. Wilson, 281 S. W., 289; 13 C. J., p. 244.

MR. JUDGE HICKMAN delivered the opinion of the Commission of Appeals, Section A.

This is a proceeding under the Workmen's Compensation Law. On or about December 30, 1930, J. B. Russell lost his life in an explosion at the plant of his employer, United States Torpedo Company, near Electra, Texas. The defendants in error, his beneficiaries, filed a claim for compensation against the plaintiff in error, the alleged insurer, but their claim was denied by the Industrial Accident Board. On an appeal from the order denying an award, the case was tried in the District Court, resulting in a judgment that they take nothing based upon a verdict of a jury returned in obedience to a peremptory instruction. On appeal to the Court of Civil Appeals the judgment of the trial court was reversed and the cause remanded thereto. Russell v. Texas Employers Insurance Association, 61 S. W. (2d) 553.

The only question presented for decision is whether the employer, the United States Torpedo Company, was a subscriber on the date of the explosion, as that term is employed in the Workmen's Compensation Law. No policy was ever issued to it, but it is claimed by defendants in error that it was a subscriber in virtue of two separate applications, one dated February 25, 1928, and the other dated November 19, 1930.

We consider first whether the Torpedo Company was a subscriber and its employees covered by compensation insurance in virtue of the first application. The facts material to a decision of that question may be stated as follows: On the date named the Torpedo Company made application to the Association for a policy of compensation insurance. The Association declined to issue the policy on the ground that the risk was extra hazardous and it had the right under the law to refuse to write insurance covering any class of business deemed by it to be an undesirable risk. Thereupon, a suit was instituted by the Torpedo Company in the District Court of Travis County to compel the Association by mandamus to issue to it a policy of insurance in accordance with the terms of the Workmen's Compensation Law. The case was tried on an agreed statement of facts in which were contained, among others, the following stipulations: "That this application was in due and proper form. With the application the plaintiff tendered to the defendant association the required premium deposit." Upon a hearing the mandamus was granted requiring the Association

to accept the application of the Torpedo Company to become a subscriber and to issue to it a policy of compensation insurance covering its employees "upon the plaintiff paying to the defendant in cash the premium required for such policy under the laws, rules and regulations of the Insurance Commission of Texas." That judgment was superseded by a bond fixed, as to amount, by the trial judge and the case was removed to the Court of Civil Appeals at Austin, by which court it was affirmed. Texas Emp. Ins. Assn. v. United States Torpedo Co., 8 S. W. (2d) 266. Writ of error was granted by the Supreme Court and, as reflected by its opinion reported in 26 S. W. (2d) 1057, the judgment of the Court of Civil Appeals was by it affirmed. The opinion of the Supreme Court was released on April 23, 1930, and judgment rendered on that date. In a short time thereafter judgment became final and mandate was issued. All of the proceedings in that litigation are reflected by the record in the instant case.

After the judgment of the Supreme Court became final, the Torpedo Company took no steps to procure a policy of insurance until November of that year. The occasion for reviving the question was a visit at the office of the Torpedo Company, made by an auditor of the Association seeking data as to the pay rolls of the company upon which to calculate the amount of earned premiums. Upon learning of this purpose the Torpedo Company denied liability for any earned premiums. We leave the narrative at this point to consider whether the Torpedo Company and its employees were protected by compensation insurance on the date of the explosion, December 30, 1930, in virtue of this application and the court proceedings.

■ The question of whether the employees were protected during the pendency of the litigation is not presented for decision. But, for the purpose only of determining the question which is presented, let it be assumed that they were protected. Does it follow that the protection continued beyond the period of the litigation? The Torpedo Company was not compelled to procure a policy at the termination of the litigation unless it desired to do so at that time. The court decree did not grant, and could not have properly granted, to it a continuing policy of insurance without the payment of the required premium. It was its duty, if it desired further compensation insurance, forthwith after the termination of the litigation to comply with the decree. Its act in failing to do so and in denying liability for any earned premiums must be construed, as a matter of law, as an election to terminate the protection, if any, which

it had enjoyed during the pendency of the litigation. It is clear that the Torpedo Company was not a subscriber on the date of the explosion in virtue of the original application of February 25, 1928.

Was the Association estopped by its conduct to deny that it was the insurer of the Torpedo Company on the date of the explosion? It was contending· through one of its officers that it had been "on this risk" since the original application, and as late as a month prior to the explosion it was seeking to collect earned premiums down to date. This presents the question of whether the Association in its dealings with reference to premiums is governed by the principles of estoppel applicable to transactions between individuals and ordinary business concerns.

■ The Association is not a private corporation, but a governmental agency, set up for a proper administration of the Workmen's Compensation Law. Middleton v. Texas Power & Light Company, 108 Texas, 96, 185 S. W., 556. It has no power to fix rates, but is charged with the public duty of collecting premiums assessed under the rates fixed by the Insurance Commission and paying from the fund so assembled the just claims of employees. It cannot discriminate between subscribers, nor can it be compelled to issue a policy to an employer who has not brought himself within the conditions of the law entitling him thereto. A contract to issue a policy based upon a less rate than that prescribed by the Insurance Commission would be contrary to law and, therefore, void. The question presented is analogous to that of freight charges by railroad companies.

In the case of Houston & T. C. R. Co. v. Johnson, 41 S. W. (2d) 14, 83 A. L. R., 241, this Court held that a railroad company was not estopped to recover freight charges by its representation to a purchaser from the consignee that freight was prepaid, even though such purchaser was thereby induced to act to his injury. If .the Torpedo Company was not a subscriber in fact, no representation by the Association that it was a subscriber would operate to make it one. The question presented should not be confused with the question of whether, having issued a policy under which the employee has contractual rights, the Association could defend on the ground that the subscriber was in arrearage on premium payments.

■ This leads to a consideration of the question of whether the Torpedo Company was a subscriber in virtue of its second application, with reference to which the material facts are:

After the auditor appeared at the office of the Torpedo Company in November, 1930, negotiations with reference to the payment of earned premiums were begun between it and the Association. For a time they debated the question of whether it owed anything for earned premiums. It appears that one of the officials of the Association was somewhat inclined to the view of there being some equity in favor of the contention of the Torpedo Company that it was entitled to a remission of, at least, a portion of these premiums, and this official suggested that a new application be made. Accordingly, on or about November 19, 1930, a new application was made and forwarded to the Association accompanied by a check for $229.07, on which was the following notations: "In full payment of the following items: estimated amount advance premium * * *." Another official of the Association, who entertained the view that all earned premiums were due, replied to the letter transmitting this application and check, returning both to the Torpedo Company and declining to accept the check for two reasons: First, because of the notation it bore, and, second, because the Torpedo Company was indebted on earned premiums and the check could be accepted only as a payment thereon. Further negotiations between the Torpedo Company representative and the president of the Association resulted in an agreement by the latter that at the next meeting of a committee of the Board of Directors the question of adjustment of the amount which the Torpedo Company should pay for earned premiums would be submitted to it for consideration, but before the meeting was called the explosion occurred and no further negotiations were conducted.

There is no showing that the Torpedo Company brought itself within the terms of the law requiring the Association to issue to it a policy of insurance. It applied for a policy to be issued upon rates substantially less than those fixed by the Insurance Commission. The check accompanying the application was insufficient in amount whether regarded as a payment of the estimated advance premium or as the required premium deposit. It was drawn for $229.07, and the record evidences that the estimated advance premium as fixed by the Commission, was many times that amount, and that the required premium deposit was substantially greater than that amount. For reasons above stated in discussing the question of estoppel, the Association could not be held to have waived the compliance by the Torpedo Company with the requirements of the law whereby it could become a subscriber.

We further conclude that the relief herein sought could be granted only in a suit to which the Torpedo Company is a party. In no other proceeding could the rights of all parties be safeguarded. It is not at all improbable that it could successfully defend against a suit brought by the Association for the collection of premiums accrued after its last application was denied. It is not in this suit making any tender or otherwise offering to do equity. A just regard for the rights of the subscribers whose premium payments make up the fund from which claims are paid would require that the Torpedo Company be, at least, legally obligated to pay the premium charges as a condition precedent to the right of recovery. The right of claimants to compensation can rise no higher than the right of the Torpedo Company to compel by mandamus the issuance of a policy, and its right to do so cannot be effectively established in a suit to which it is not a party.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion adopted by the Supreme Court February 26, 1936.

Rehearing overruled April 15, 1936.