### CAPPS v. GENERAL ACCIDENT FIRE & LIFE ASSUR. CORPORATION, Limited.

Civ. A. No. 4893.

United States District Court
S. D. Texas, Houston Division.
May 16, 1950.

Allen, Cocke & Lawrence, Richard H. Cocke, of Bryan, Tex., for plaintiff.

Fulbright, Crooker, Freeman & Bates, Newton Gresham, of Houston, Tex., for defendant.

CONNALLY, District Judge.

The plaintiff C. C. Capps, doing business as "C & C Drilling Company", filed this action in the District Court of Brazos County, Texas, to recover damages from the defendant General Accident Fire & Life Assurance Corp., Ltd., alleging a wrongful failure to issue a policy of workmen's compensation insurance to the plaintiff as an employer. The action was removed to this Court on diversity of citizenship.

During the year 1948 and some time prior thereto, the plaintiff was engaged in the business of drilling shallow wells in and near Brazos County, Texas. The plaintiff had wide experience as a worker in the oil fields, but his drilling rig and equipment were only capable of drilling to approximately 2,500 feet, and for that reason his drilling operations largely were restricted to drilling water wells. During the year prior to the occurrence which gave rise to this suit, he had drilled two shallow holes in search of oil.

On January 6, 1949, as an employer of labor, the plaintiff had applied for and had

been issued a workmen's compensation and employer's liability policy on the Texas standard form by the defendant. This covered the plaintiff's operations in drilling water wells, but specifically excluded drilling operations for oil or gas. Application for this coverage had been made by the plaintiff through W. C. Mitchell, an authorized representative of the defendant in Brazos County, who in turn communicated with the defendant's Houston office. The policy was issued in Houston, forwarded to Bryan, countersigned by Mitchell, and by him delivered to the plaintiff. Mitchell had no authority to issue workmen's compensation policies without prior approval by the Houston office, but was authorized to solicit applications therefor, to countersign and to deliver such policies. In prior years, Mitchell had written a substantial amount of insurance for the plaintiff.

About the middle of January, 1949, through an agent, the plaintiff entered into negotiations with one Coffee, looking toward the drilling by the plaintiff for Coffee of a shallow oil well. (from 1,300 feet to 2,000 feet in depth) in Washington County, Texas. The price was to be $3 per foot, and work was to begin on or before Feb. 1, 1949. Coffee made it a condition of the contract, however, that the plaintiff would carry workmen's compensation insurance covering the drilling operations. Thereupon, the plaintiff applied to Mitchell for an extension of coverage of his compensation policy to include the drilling of oil wells. He was willing and able to pay the prescribed premium. He showed Mitchell a writing which purported to be the proposed contract for drilling of the well, and pointed out the condition requiring that he carry compensation insurance.

Mitchell expressed doubt that the defendant Company would write this type of coverage, as it was not their practice to do so. However, he called the Houston office, spoke to an authorized representative of the defendant in Houston, and was told that the company declined to write the risk, for the reason that compensation covering oil field operations was too hazardous, and that the company made it a practice to decline such business. Mitchell suggested to the plaintiff that he make application to the Texas Employers' Insurance Association, the agency created by the Texas Statute for the purpose of providing employers with compensation coverage. Art. 8308, R.C.S.1925, Vernon's Ann.Civ.St. art. 8308.

Pursuant to this suggestion, the plaintiff drove to Austin, where he made oral application for this coverage to the Texas Employers' Insurance Association. This concern likewise declined to write the insurance, stating that the defendant Company carried the cream of plaintiff's business and Texas Employers' did not desire to be burdened with only the more hazardous coverage. Plaintiff then sought the advice of Honorable George B. Butler, Chairman of the Board of Insurance Commissioners of this state. Mr. Butler's efforts in plaintiff's behalf, seeking to induce Texas Employers' to write the coverage, were unsuccessful. During the last two weeks of January, 1949, plaintiff made at least two trips to Austin, and talked to Mitchell on several occasions, in an effort to secure the coverage. He explained to Mitchell the need for the insurance, and the fact that he would fail to secure his anticipated profits of the drilling venture above referred to if he were unable to secure the coverage by February 1, 1949. Finally he was forced to forego the contract. Coffee procured another drilling contractor, who drilled the well to 1,842 feet, at a price of $3.50 per foot. The drilling was uneventful.

Plaintiff bases his cause of action on the proposition that any insurance company qualified under the laws of this state and engaged in the business of writing workmen's compensation insurance is obliged to write such coverage at the premium prescribed by the state authorities, for any qualified employer who makes application therefor; that the defendant wrongfully refused to write the additional coverage for which the plaintiff applied, and that plaintiff thus was prevented from complying with his drilling contract and from enjoying the profits which he would have derived. He alleges damages in the amount of $4,500, the difference between his al-

legation of the contract price and his estimated cost of performance.

The defendant interposes many defenses. It states that there is no statute or rule of law of this state which requires a private insurance carrier writing compensation insurance to accept any and all applications submitted; that if there is any such statute, same restricts the freedom of contract and is violative of the Constitution of the United States and of the Constitution of Texas; that plaintiff's complaint is predicated upon a contract between plaintiff and Coffee, and no such contract ever came into existence; that the damages which plaintiff has alleged, and the proof thereof which he has offered, makes such damages too speculative and uncertain to permit recovery thereof; that the plaintiff failed to use due diligence to mitigate his damages; and that if the plaintiff is entitled to any recovery, it is for nominal damages only.

█ The workmen's compensation statutes of this state, Art. 8306 et seq., R.C.S. 1925, Vernon's Ann.Civ.St. art. 8306 et seq., in depriving the employer of labor of his common law defenses, provided the means whereby he might provide himself with the insurance which the statute contemplates. Texas Employers' Insurance Association was created for this express purpose by the statute in question. The statute likewise contemplated that private insurance companies would become authorized to write workmen's compensation insurance under the terms of the statute, and defines the term "Association" (meaning the insurer) as "the 'Texas Employers' Insurance Association' or other insurance company authorized under this law to insure the payment of compensation to injured employes or to the beneficiaries of deceased employes", Sec. 1, Art. 8309. The Commission of Appeals has specifically held in Texas Employers' Ins. Ass'n v. U. S. Torpedo Co., 26 S.W.2d 1057, that the Texas Employers' Insurance Association is required by the terms of the statute to issue policies of insurance to any qualified employer who makes application therefor, and cannot refuse to accept a tendered risk because of its extra hazardous nature.

Mandamus was granted to compel the issuance of the policy in that opinion. The Commission further states that such holding is not restricted to the Texas Employers' Insurance Association, but applies as well to private insurance companies who desire to and do enter into the business of writing compensation insurance under the terms of the Texas statute: "Construing these provisions in connection with the objects and purposes sought to be accomplished by the passage of this law, we think it reveals a legislative design to place all insurance companies seeking to issue policies under the terms of the Workmen's Compensation Act in the same position as the Texas Employers' Insurance Association, and requires them, if they desire to issue any policies under the act, to cover all employers who are entitled to become subscribers thereunder." 26 S.W. 2d at page 1059.

This opinion has been followed by more recent cases, including Harris v. Traders' & General Ins. Co., 82 S.W.2d 750 and Federal Underwriters Exchange v. Walker, Tex.Civ.App., 134 S.W.2d 388. In the Harris case, the Beaumont Court of Civil Appeals states: "It is now the settled law of this state that Texas Employers' Insurance Association and all private insurance companies writing compensation insurance under the provisions of our Workmen's Compensation Act (Rev.St. 1925, art. 8306 et seq., as amended [Vernon's Ann.Civ.St. art. 8306 et seq.]), are required to accept all risks tendered them; they have no right to select one employer as a suitable risk and write him, and decline to write another employer, qualified under the terms of the Workmen's Compensation Act to carry compensation insurance. Texas Employers' Ins. Ass'n v. U.S. Torpedo Co., Tex.Com.App., 26 S.W.2d 1057; Southern Casualty Co. v. Freeman, Tex.Civ.App., 13 S.W.2d 148". Defendant urges in its brief that the statement of the rule, as applied to a private insurance company, is dictum. While this may be true, in the absence of any authority to the contrary, I am inclined to accept such clear and forceful expression from the Commission of Appeals in a case which

has been widely and favorably cited as accurately stating the law of this State.

The defendant has cited no authority in support of its contention that the Texas statute, as interpreted here, violates Article 1, Section 10, or Section 1, Fourteenth Amendment, of the Constitution of the United States; or that it violates Article 1, Section 16 or Section 19 of the Constitution of the State of Texas. The holdings of the cases cited above indicate that the statute is not subject to attack on constitutional grounds.

■ While the plaintiff did not enter into a contract with Coffee for drilling of the well, I find that he was prevented from doing so only by the defendant's failure and refusal to issue the workmen's compensation insurance to which the plaintiff was entitled. I find that the defendant knew of the plaintiff's proposed contract with Coffee, of the plaintiff's efforts to secure his coverage elsewhere, and, toward the latter part of January, knew that such efforts probably would be unsuccessful.

Having wrongfully failed to issue the coverage, after knowledge of the fact that the plaintiff would no doubt lose his anticipated profits from the proposed contract as a result thereof, I think, and conclude, that the defendant should respond in damages.

■ In its trial brief, as well as in oral argument, the defendant has dwelt at length on its contention that plaintiff's damages are too speculative and uncertain to support a judgment (a) because the business of drilling oil wells is by nature very uncertain, and attendant with dangers and expense which may not with certainty be anticipated, and (b) because, so the defendant contends, plaintiff's business as an *oil well driller* is so new and untried that his estimated profits cannot be determined with the degree of certainty which the law requires, citing Deep Rock Oil Corp. v. Griffeth, 177 Okl. 208, 58 P.2d 323; Storley v. Armour & Co., 8 Cir., 107 F.2d 499; and Allbritton v. Mading's Drug Store, Inc., Tex.Civ.App., 138 S.W.2d 901. Of course, it is true that drilling is an uncertain business. Unforeseen circumstances may cause the driller to sustain substantial losses on any particular operation, but normally that is not the case; and in this case, the uncertainties are largely removed by proof of the fact that the other driller drilled the well in question without difficulty. The business is not so hazardous nor the profit so uncertain as to prevent recovery of the anticipated profits from a drilling contract which has been wrongfully breached. Osage Oil & Refining Co. v. Lee Farm Oil Co., Tex.Civ. App., 230 S.W. 518. Likewise, I do not believe it can be said that the plaintiff's business is new and untried. Personally he has had wide experience in the drilling of oil wells while employed by others. Since engaging in business for himself he has drilled many holes to the depth of the one in question. He testified in some detail as to the expense to which he normally would have been put. He was corroborated in many particulars by the testimony of the other driller. I do not consider the cases which the defendant cites to be in point.

■ The defendant urges vigorously that plaintiff did not use due diligence in attempting to secure his insurance from other companies, and offers evidence to prove that there were a number of local insurance agents in the City of Bryan, Texas, who collectively represented a great many other carriers engaged in writing compensation coverage. I have detailed above plaintiff's efforts to secure the coverage from other companies, and I find that he used all reasonable diligence toward that end. Having made two trips to Austin, having applied to and been rejected by Texas Employers' Insurance Association, and having solicited and received the advice and active support of the Chairman of the Board of Insurance Commissioners of this state in attempting to secure such coverage, I do not believe it can be said that the plaintiff sat idly by without effort to minimize his damage.

■ The plaintiff testified that the difference between his contract price and his expenses for drilling the well would have been approximately $4,000. The defendant has suggested several additional items

232

of expense. The defendant further has shown that during part of the time in which plaintiff would have been engaged in drilling the well in question, he was able to secure other work and to utilize his equipment. While the evidence does not show accurately the amount by which his damages were reduced, I think the plaintiff's figures are extravagant and find his damages at $2,500.

The foregoing is adopted as findings of fact and conclusions of law. Clerk will notify counsel, and counsel for the plaintiff will prepare and present decree.