### MEL HANDLING EQUIPMENT CO., INC., Appellant,

v.

### TEXAS WORKERS' COMPENSATION INSURANCE FACILITY, Appellee.

#### No. 03–99–00839–CV.

Court of Appeals of Texas, Austin.

June 15, 2000.

Rehearing Overruled Sept. 21, 2000.

Charles M. Wilson, III, Dallas, for Appellant.

Donald M. Barnett, Reyes Law Firm, Austin, for Appellee.

Before Justices KIDD, B.A. SMITH and POWERS.*

JOHN E. POWERS, Justice (Retired).

The Texas Workers' Compensation Insurance Facility (the "Facility") recovered summary judgment against Mel Handling Equipment Company, Inc. (the "Company") in the amount of $6,271.36, representing disputed premiums claimed by the Facility under a workers' compensation insurance policy, together with $1,567.84 in attorney's fees and additional sums for interest.[1] The Company appeals. We will reverse the summary judgment and remand the cause to the trial court.

## THE CONTROVERSY

The Company purchased from the Texas Workers' Compensation Assigned Risk Pool (the "Pool") a policy of workers' compensation insurance covering the period November 30, 1990, to November 30, 1991. The policy showed a "total Estimated Premium" of $9,353 for the one-year policy. After paying an initial "Deposit Premium" of $2,402, the Company paid additional sums monthly over the life of the policy; the additional monthly payments included adjustments for actual payroll fluctuations during the policy year.

At the end of the one-year period, the Facility, as successor to the Pool, demanded of the Company an additional premium equal to $7,166.87. The additional premium resulted from the Facility's retrospective application of an "experience modifier" and a "tabular surcharge." The experience modifier resulted from the Company's expected loss rate during the life of the policy, based on the Company's actual loss experience during a time period preceding

---

* Before John E. Powers, Senior Justice (retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. The Texas Workers' Compensation Assigned Risk Pool (the "Pool") wrote the policy under which the Facility claimed the premiums in controversy here. The Pool was established by former article 5.76 of the Texas Insurance Code, which required the Pool to furnish workers' compensation coverage to employers who could not obtain such coverage in the voluntary market from either the Texas Employer Insurance Association or another authorized carrier, and were thus "rejected risks." On an employer's application, the Pool calculated a deposit premium in accordance with rates and classifications promulgated by the State Board of Insurance (now the State Department of Insurance). After receiving a deposit, the Pool designated one of several "servicing companies"—independent carriers who were members of the Pool—to issue the policy for the Pool. The servicing companies were reinsurers of the insurance thus provided by the Pool. *See* Tex. Ins.Code Ann. art. 5.76 (West 1981); Lerner, *Workers' Compensation Law and Practice*, 37 Texas Practice § 5.04 at 347–48 (1989).

The Facility, a private, non-profit, unincorporated association of insurers, succeeded to the Pool's functions on January 1, 1991, shortly after the Pool issued to the Company the policy involved in the present litigation. The Facility ceased writing workers' compensation insurance on December 31, 1993, after which the Texas Workers' Compensation Insurance Fund became insurer of last resort for such coverage. *See* Tex. Ins.Code Ann. art. 5.76–4 (West Supp.2000); *Turner Bros. Trucking Co., Inc. v. Commissioner of Ins.*, 912 S.W.2d 386, 387 n. 1, 2 (Tex.App.—Austin 1995, no writ).

November 30, 1990, the effective date of the policy. The tabular surcharge was an accompanying charge that resulted automatically from imposition of the experience modifier under an official handbook and table that evidently governed the Facility's operations.

The Company declined to pay the additional $7,166.87 based upon a statement in a binder issued by the Pool, in advance of the policy, which declared that "[n]o Modifier and No Surcharge Will Apply, Subject to Change on Anniversary Rate Date." Contending the statement was not controlling, the Facility sued the Company in the present cause and recovered the summary judgment from which the Company appeals. The Company contends the Facility was not entitled to judgment as a matter of law under the summary judgment record.

## THE SUMMARY JUDGMENT RECORD

### The Binder

On December 6, 1990, the Pool issued to the Company a "Binder for Workers' Compensation Insurance" signed by the Pool's general manager. The binder states that it is effective November 30, 1990, that the "Binder shall end" 30 days thereafter, and that "[t]his undertaking will be evidenced by a policy contract to be issued by" Employers Casualty Company "as the servicing company" for the policy. The binder directs Employers Casualty Company to

issue the policy with the following special instructions and optional coverages:

All insured entities listed below: Mel Handling Equipment Co., Inc.

This Risk has been Switched to the Servicing Company Shown Above.

The Reporting Basis will be Monthly.

*No Modifier and No Surcharge will Apply, Subject to Change on Anniversary Rate Date.*

Provide Elected Coverage for Proprietors, Partners, Officers.

Estimated Annual Premium: $9,353.

Enclosures: Application: Deposit Check $2,402.

(Emphasis added.)

### The Application

The application consists of four pages and bears the heading "Application for Workers' Compensation Insurance—The Texas Workers' Compensation Assigned Risk Pool." The application is signed by Milligan F. Sherard, as president of the Company, and dated by him December 27, 1990. The following statement is found in the application, in capital letters, immediately below the heading:

IMPORTANT NOTICE—PLEASE READ BEFORE MAKING APPLICATION

. . . .

IT IS IN APPLICANT'S BEST INTEREST TO EXHAUST ALL EFFORTS TO OBTAIN ... INSURANCE IN THE PRIVATE MARKET BEFORE MAKING APPLICATION TO THE POOL *SINCE HIGHER PREMIUMS MAY RESULT THROUGH POOL SURCHARGES UP TO 50% OF STANDARD PREMIUMS.* NO PREMIUM DISCOUNT PAID ON POOL POLICIES.

The application states that the "Total Estimated Annual Premium" is $9,353, payable as follows: a $2,402 "Deposit Premium" and eleven monthly installments thereafter. The Company agrees in the application "[t]o pay as due all monies for premiums under such policy to the Servicing Company," Employers Casualty Company in this instance, and "[t]hat no insurance coverage will be considered bound by the Pool until [the Company] has received a binder duly executed by the General Manager of the Pool and such insurance shall become effective only from the date ... specified by the Pool Manager."

Toni Palermo, the Company's insurance agent or "producer of record," evidently calculated the estimated annual premium of $9,353 shown on the application.

## The Policy

The first page of the policy is titled "Information Page." The Information Page reflects that Employers Casualty Company issued to the Company policy number C–25x2076, providing coverage for the period November 30, 1990, to November 30, 1991. A blank follows the printed statement that "[t]his policy includes these endorsements and schedules." Notwithstanding the blank, copies of four apparent endorsements follow the information page in the summary judgment record, indicating perhaps that they were attached to the Information Page when it was delivered to the Company. In any case, the four endorsements in the record are not relevant to any issue in the appeal.

The Information Page next declares as follows: The premium for this policy will be determined by our Manuals of Rules, Classifications, Rates and Rating Plans. All information required below is subject to verification and audit. The "information required below" sets forth the classifications and rates that result in the "Estimated Annual Premium" of $9,353, exactly as shown in the Company's application.[2]

## Audit Papers

Five pages in the summary judgment record pertain evidently to the servicing company's audit, the resulting calculations of the experience modifier and tabular surcharge, and the consequent premium increase claimed by the Facility. The pages are titled "Experience Rating Form" dated November 1, 1991; "Payroll Audit Worksheet" dated December 4, 1991, "Audit Summary" dated December 19, 1991; Audit Processing Worksheet dated December 19, 1991; and "Audit Premium Adjustment" dated December 19, 1991.[3]

The audit-paper calculations show a "standard premium" and "net earned premium" of $18,958, of which the Company had paid $11,791.13 during the life of the policy, leaving an additional premium due equal to $7,166.87, the amount claimed by the Facility in its original petition and motion for summary judgment.[4]

## Request for Endorsement

On November 5, 1991, a person identified as "S.A." prepared a "Request for Endorsement" addressed to "Direct Underwriting Department." One section of

---

**2.** The application and policy show the following premium calculations:

| Classification Code | Payroll | Rate | Premium |
|---|---|---|---|
| 8107 | $ 81,564 | 9.67 | $ 7,887 |
| 8809 | 22,100 | .78 | 172 |
| Pool-rate Differential (15%) | | | 1,209 |
| Expense Constant | | | 85 |
| | | | |
| Total Estimated Premium | | | $ 9,353 |

The additional premiums resulting from the Facility's audits and imposition of the experience modifier and tabular surcharge produced the following additional premiums claimed by the Facility:

| Classification Code | Payroll | Rate | Premium |
|---|---|---|---|
| 8107 | $ 92,926 | 9.67 | $ 8,986 |
| 8809 | 22,100 | .78 | 172 |
| Pool-rate Differential (15%) | | | 1,374 |
| Experience Modifier | | 1.28 | 2,949 |
| Tabular Surcharge (40%) | | | 5,392 |
| Expense Constant | | | 85 |

| Total Annual Premium | $18,958 |
|---|---|

**3.** The Company's policy provided coverage from November 30, 1990, to November 30, 1991. The Facility was under a duty to make a timely computation of the final premium resulting from retrospective application of the experience modifier and tabular surcharge. If we understand correctly the audit papers, the computation was not done in this instance until after expiration of the policy on November 30, 1991. The Company has not, however, complained that the computation was not timely. *See Monarch Life Ins. Co. v. Trinity Indus., Inc.*, 495 S.W.2d 41, 43–44 (Tex.Civ. App.—Dallas 1973, no writ); *see generally* 14 Appleman on Insurance § 7849.25 at 143 (1985).

**4.** *See supra* n. 2. The Facility moved for summary judgment in the principal amount of $7,166.87, the amount claimed in the Facility's petition to be due and owing. The Facility recovered summary judgment, however, in the amount of $6,271.36. The latter amount results from the Facility's answer to a written interrogatory conceding that the "current balance due" is $6,271.36.

the printed form is titled "Changes (List effective dates and remarks: Refer to Check list in Activity Guide)." In that section, the following handwritten statement appears:

*Subst. sched.*
Exp. mod. 1.28
Tab SC 40%
SC letter

### Servicing Company Handbook

A copy of the title page of the handbook is found in the record. The page bears the title *Texas Workers Compensation Insurance Facility Servicing Company Handbook.* The publisher is not indicated. The succeeding page is headed "Rules and Regulations Governing Pool and Servicing Companies of Assigned Risks." The following appears under that heading:

*Present Phraseology*

V. RATES AND ASSIGNED RISKS

Rates and Rating Plan used shall be those prescribed by the State Board of Insurance for assigned risks.

*New Phraseology*

V. RATES FOR ASSIGNED RISKS

Rates and Rating Plan used shall be those prescribed by the State Board of Insurance for assigned Risks.

*There shall be a mandatory tabular surcharge plan for all risks having an experience modification in excess of 1.00. The tabular surcharge plan is shown in the Miscellaneous Value rate pages.*

On what appears to be the next page of the handbook shown in the summary judgment record is found a table headed "Assigned Risk Pool Tabular Surcharge Plan." This page lists, under the subheading "Experience Rating Modification," numbers from "1.00 or less" to "over 2.50." Opposite these numbers, which appear to be experience modifiers, is shown a corresponding list of numbers under the heading "Tabular Surcharge." These are apparently percentages. Opposite experi-

ence modifiers 1.26 through 1.30 is shown a tabular surcharge of 40%. These are, it appears, the authority for the 1.28 experience modifier developed in the Audit Papers and the corresponding 40% surcharge claimed by the Facility in the present case.

Upon the foregoing rests the summary judgment obtained by the Facility insofar as the issues on appeal are concerned.

## DISCUSSION AND HOLDINGS

■ The Company contends the summary judgment record will not sustain judgment as a matter of law on the Facility's claim for the additional $6,271.36 premium resulting from the experience modifier and tabular surcharge. We agree.

The Facility evidently recovered judgment on a theory the Facility argues in this Court: The application form completed by the Company bore a printed warning that "higher premiums may result through Pool surcharges up to 50% of standard premiums"; and the policy issued to the Company bore a printed declaration that "[t]he premium for this policy will be determined by our Manual of Rules, Classifications, Rates and Rating Plans." Thus, the Facility contends, the additional premium resulting from application of the experience modifier and requisite tabular surcharge were well within the language of the application, the policy, and the manual specified.[5]

The Facility also reasons that application of the experience modifier and tabular surcharge were not prohibited by the typewritten special instruction inserted in the binder, which directed that "No Modifier and No Surcharge will Apply, Subject to Change on Anniversary Rate Date." The Facility explains that this statement meant simply that the estimated premiums reflected in the binder and policy were subject to change on the anniversary of the policy (November 30, 1991) when the modifier and surcharge would be calculated and

5. The manual referred to is not in the sum-

mary judgment record.

imposed retroactively; but, no modifier and no surcharge would be *collected* during the one-year life of the policy. And because the additional premiums resulting from imposition of the experience modifier and tabular surcharge *were* made effective on or after the anniversary date, the additional premium was within the permissive terms of the binder, so interpreted.

■ We believe it may be possible to infer such a meaning from the statement in question. But it is also a reasonable interpretation that the statement means, as the Company contends, that no experience modifier and no surcharge would be imposed during the life of the policy ending November 30, 1991, but were permissible on any *renewal* of coverage for another period. The most that can be said for the Facility's position regarding the statement in the binder is that the statement is ambiguous. And the contrary meaning for which the Company contends is reinforced by the fact that the summary judgment record does not reflect that an endorsement, authorizing application of the experience modifier and tabular surcharge, was attached to the policy when it was delivered; nor does the record indicate that such an endorsement was issued thereafter. An endorsement was essential as a matter of law before any experience modifier and tabular surcharge could lawfully be imposed.

■ The Department of Insurance (formerly the State Board of Insurance) promulgates standard policies for workers' compensation insurance as well as rate classifications and premium plans. The Department's promulgation of premium *rates* may take the form of premium rating plans by which premiums are calculated through application of a premium rate to the employer's total payroll. *See* Tex. Ins. Code Ann. art. 5.77 (West 1981); *Union Indem. Co. v. Foley*, 62 S.W.2d 684 (Tex. Civ.App.—Fort Worth 1933, writ dism'd). The resulting rates are exclusive and no others may be fixed by contract. *See*

*T.E.I.A. v. Russell*, 127 Tex. 230, · 91 S.W.2d 317, 319 (1936).

Premium rating plans promulgated by the Department may be either prospective *or* retrospective in their application. *See* Tex. Ins.Code Ann. art. 5.77 (West 1981). In the present case, the Facility contends the applicable rating plan authorized a retrospective application of the experience modifier and tabular surcharge. We will, for purposes of discussion, assume such is the case even though the rating plan upon which the Facility relies is not contained in the summary judgment record.

The policy *forms* promulgated by the Department are also exclusive. Insurers writing workers' compensation insurance must use the official or "standard" policies. *See id.* art. 5.56 (West Supp.2000). The official or standard policies may be modified *only* by written endorsements that have been submitted to and approved by the Commissioner of Insurance. *See id.* art. 5.57 (West 1981).

The Department compiled and published its *Texas Basic Manual of Rules, Classifications and Rates for Workers' Compensation and Employers' Liability Insurance* (1980 ed.). One section of the manual is titled "Texas Standard Workers [sic] Compensation and Employers [sic] Liability Endorsements, . . . Effective July 1, 1984." The first page of that section declares that the endorsement forms that follow the first page are "the only endorsements permissible for use in affording Texas Worker [sic] Compensation and Employers [sic] liability coverages—mandatory on and after July 1, 1984." One form that follows is numbered WC 42 04 03, titled "Texas Experience Rating Modification Factor Endorsement," and states as follows:

> The premium for the policy will be adjusted by an experience rating modification factor, if any, which was not available when the policy was issued. We will issue an endorsement to show the proper factor when it is calculated.

The notes accompanying the endorsement instruct as follows:

1. This endorsement may be used if the insured's experience rating modification factor is not available when the policy is issued.

2. An appropriate typewritten entry may be made in the Information Page instead of using this endorsement.

The Information Page of the policy shown in the summary judgment record does not contain "[a]n appropriate typewritten entry" of the kind indicated. The summary judgment record does not contain an endorsement authorizing an experience rating modification that was not available when the policy was issued, on a form approved by the Commissioner of Insurance, which is among "the only endorsements permissible for use in affording" workers' compensation coverage. Because the Department's official or standard policies may be modified only by such written endorsements, we cannot say as a matter of law that the Facility was authorized to impose the additional premium based on the experience modifier and corresponding tabular surcharge.

We reverse the summary judgment for the reasons stated and remand the cause to the trial court for further proceedings.